**EPIS, INC., dba EPIS Insurance Services, Plaintiff,**

v.

**FIDELITY AND GUARANTY LIFE INSURANCE COMPANY, et al., Defendants.**

No. C 01–0474–SI.

United States District Court, N.D. California.

July 30, 2001.

Christopher R. Lucas, Goforth & Lucas Law Offices, Concord, CA, for EPIS, Incorporated dba EPIS Insurance Services, Plaintiffs.

Geoffrey T. Tong, Margaret Levy, Henry C. Wang, Manatt Phelps & Phillips, Los Angeles, CA, William R. Hart, Richard P. Gerber, Hart King & Coldren, Santa Ana, for Fidelity & Guaranty Life Insurance Company, a Maryland Corporation dba F & G Life, Homesaver International, Inc. aka Homesaver, Innovative Marketing Strategies, Inc., a California Corporation and a member of the Epic Marketing Corporation, defendants.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND

ILLSTON, District Judge.

Currently before the Court are defendant's motion for summary judgment and plaintiff's motion for leave to amend the complaint. Having considered the arguments of counsel and the papers submitted, the Court hereby GRANTS defendant's motion and DENIES plaintiff's motion.

## BACKGROUND

On March 20, 2000, plaintiff EPIS, Inc., d/b/a EPIS Insurance Services ("EPIS") filed a state court action against Fidelity and Guaranty Life Insurance Company ("F & G"), Innovative Marketing Strategies, Inc. ("Innovative"), and Homesaver International Inc. ("Homesavers"). Following the voluntary dismissal of the only non-diverse defendant, the case was timely removed by F & G to this court on January 29, 2001. The Second Amended Complaint ("SAC") states causes of action against F & G for breach of contract, breach of the covenant of good faith and fair dealing, and trade libel/defamation.

The facts underlying the dispute are as follows. On March 27, 1997, EPIS and F & G entered into a General Agent's Agreement, authorizing EPIS to sell certain life insurance and annuity products on behalf of F & G. *See* Declaration of Tony P. Wilkey ("Wilkey Decl."), Exh. A, General Agent's Agreement ("GAA"); Separate Statement of Undisputed Material Facts in Support of F & G's Motion ("F & G's Statement of Facts") ¶ 2; Plaintiff EPIS' Separate Statement of Undisputed Facts in Opposition ("EPIS Statement of Facts") ¶ 2. Section 22 of the GAA provides that the agreement "may be terminated by either party upon 30 days notice in writing by ordinary mail to the last known address of the other party, or may be terminated by the Company immediately for cause." [1] GAA. Section 23 of the GAA provides, in pertinent part:

1. Section 22 defines "cause" as:
 A. breaching this Agreement;
 B. violation of any insurance law or regulation, or criminal conduct on your part;
 C. directly or indirectly inducing or attempting to induce any policy owner of the Company to stop premium payments or surrender any policy;
 D. loss, suspension, revocation, or voluntary surrender of your license;

B. Effect on Previous Agreements: The execution of this Agreement abrogates, terminates, and supersedes all previous agreements between you and the Company.

C. Amendment of Agreement: This Agreement can only be amended and modified by a written instrument properly executed by you and an authorized officer of the Company. Failure of the Company to take advantage of any breach of the terms, conditions, or covenants herein contained shall not constitute a waiver or estoppel to thereafter enforce any of said terms, conditions or covenants. This Agreement cannot be modified by any acquiescence in practices or courses of dealing by the Company contrary to the terms, conditions, or covenants thereof.

*Id.* On March 19, 1999 F & G sent EPIS a letter stating, in part:

In accordance with the terms of your agreement dated March 26, 1997 section 22, we are exercising our right to terminate that agreement.

We ask that you return, to my attention, any and all marketing, sales, and agent contract information you may have for F & G Life in addition to any and all administrative materials you may have in your possession.

*See* Wilkey Decl., Exh. C. ("March 19, 1999 Letter"). On April 16, 1999, in response to an inquiry from EPIS, F & G wrote a second letter to EPIS providing:

E. misrepresentation of any material information in your application for appointment as a General Agent or in any additional documents supporting that application; or
F. your insolvency, bankruptcy, reorganization, or the institution of such or similar proceedings by or against you.

*Id.*

Th[e] letter indicates that EPIS believes that it was terminated for cause by F & G Life Insurance by letter dated March 19, 1999. Please be advised that the termination exercised under Section 22 of the producer agreement was a notice termination and not a termination for cause.

We trust this clarification resolves the issues raised in your letter. If I can be of further assistance please feel free to contact me directly.

*See* Wilkey Decl., Exh. D ("April 16, 1999 Letter"). On April 22, 1999, F & G sent a third letter to EPIS regarding the exercise of termination under Section 22 of the GAA. That letter states in part:

Your letter of April 21, 1999 raises questions regarding the EPIS termination and the reason for the termination.

As to the actual termination, F & G Life Insurance Company notified EPIS by letter dated March 19, 1999 that it was terminating the producer agreement between it and EPIS. Section 22 of that agreement allows for termination by either party upon thirty (30) days notice or termination for cause based upon certain enumerated provisions. F & G Life did not terminate the agreement for cause and did not rely on one of the provisions set forth in Section 22 defining "cause." Instead, F & G Life provided a written notice to EPIS indicating termination of the agreement (a "notice termination") as Section 22 provides.

Your second query concerns the reason for the termination and I would direct EPIS to Mr. McDaniel or Mr. Abate for that discussion. I point out that no reason is required for F & G Life to terminate its relationship with EPIS upon proper notice. EPIS enjoyed the same right to disassociate itself in the same manner while the agreement was in force and again, no reason would have been required.

*See* Wilkey Decl., Exh. E ("April 22, 1999 Letter").

EPIS alleges that F & G breached the GAA by terminating the agreement despite the "custom and practice, Federal Regulations, and implied and express duties of good faith and fair dealing" which were incorporated into the GAA, and which prevented F & G from arbitrarily terminating the GAA without good cause and without notice or opportunity to correct any claimed breaches, defaults or nominal violations. SAC ¶¶ 30, 39. EPIS also argues that F & G's obligation of good faith and fair dealing included the implied covenant that F & G would not arbitrarily terminate the GAA under Section 22 or any other section of the GAA. SAC ¶ 50. The implied covenant of good faith and fair dealing, coupled with the terms, conditions and purposes of the GAA, also impliedly limited F & G's ability to terminate the GAA upon 30 days notice. *Id.* Finally, EPIS contends that F & G defamed EPIS. SAC ¶ 66.

Currently before the Court is F & G's motion for summary judgment, F & G's objections to evidence submitted by plaintiff in opposition to F & G's motion for summary judgment, and EPIS' motion to amend the Second Amended Complaint.

## LEGAL STANDARD

### I. Motion for Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The moving party bears the initial burden of demonstrating the

absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The moving party, however, has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only point out to the Court that there is an absence of evidence to support the non-moving party's case. *See id.* at 325, 106 S.Ct. at 2554.

The burden then shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2519, 91 L.Ed.2d 202 (1986).

In deciding a motion for summary judgment, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor. *Id.* at 255, 106 S.Ct. at 2513. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when she] is ruling on a motion for summary judgment." *Id.*

## II. Motion to Amend

Federal Rule of Civil Procedure 15 governs the amendment of complaints. It states that if a responsive pleading has already been filed, the party seeking amendment "may amend the party's pleading only by leave of court or by written consent of the adverse party. Leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). This rule reflects an underlying policy that disputes should be determined on their merits, and not on the technicalities of pleading rules. *See Foman v. Davis*, 371 U.S. 178, 181–82, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Accordingly, the Court must be very generous in granting leave to amend a complaint. *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir.1990). The Court may deny amendment under Rule 15(a) "when amendment would be clearly frivolous, unduly prejudicial, cause undue delay or a finding of bad faith is made." *United Union of Roofers v. Ins. Co. of America*, 919 F.2d 1398, 1402 (9th Cir.1990). A Court may also deny amendment if that amendment would be futile, or if there have been previous unsuccessful attempts to cure deficiencies. *See Foman*, 371 U.S. at 182, 83 S.Ct. at 230. The Court has the discretion to determine whether the presence of any of these elements justifies refusal of a request to amend the complaint; this discretion is particularly broad where plaintiff has previously amended the complaint. *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir.1989).

## DISCUSSION

### I. Evidentiary Objections

"To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rule of Civil Procedure 56." *Block v. City of Los Angeles*, 253 F.3d 410 (9th Cir.2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265). With respect to evidence submitted by affidavit, Rule 56(e) requires that the affidavits "shall be

made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant. is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e).

F & G has filed objections to substantial portions of the evidence submitted by plaintiff in connection with the opposition to F & G's motion for summary judgment. The Court will address each objection in turn.

### A. Declaration of Steve Walthall

F & G objects to paragraph 6 of the Declaration of Steve Walthall ("Walthall Decl.") on grounds of relevance, as conclusory, and lack of foundation. These objections are overruled. F & G's objection to paragraph 11 on the ground of relevance is overruled. The objection to the first sentence of paragraph 11 on the ground of lack of foundation is sustained and it is ordered STRICKEN. The objection to the last sentence as impermissible legal conclusion is sustained and it is ordered STRICKEN.

F & G's objection to paragraph 13 is sustained as conclusory and lacking in foundation as to the "oral promises" relied on by Walthall and it is ordered STRICKEN. F & G's objections to paragraph 14 on the grounds of relevance and impermissible legal conclusion are overruled. The objection to the first sentence of paragraph 19 is sustained as impermissible legal conclusion and it is ordered STRICKEN. F & G's objection to paragraph 25 as impermissible legal conclusion and lack of personal knowledge/speculation is sustained and it is ordered STRICKEN. The second sentence in paragraph 27 is ordered STRICKEN as an impermissible legal conclusion but the objection to the first sentence is overruled.

F & G's objection to paragraph 28 on the grounds of relevance and impermissi-

ble legal conclusion is overruled on the assumption that Walthall is stating his understanding of the meaning of Section 7 of the GAA. However, F & G's objection to paragraph 29 on the basis of impermissible legal conclusion is sustained and it is ordered STRICKEN as to Walthall's belief that Section 12 and Section 7 of the GAA could conflict. F & G's objections to paragraphs 30, 31 & 33 are overruled.

F & G's objection to paragraph 35 on the basis of impermissible legal conclusion and lack of foundation is overruled on the ground that the Court infers Walthall's statement as made on his personal opinion as to the effect of the March 19, 1999 letter. The objection to paragraph 36 on the ground of lack of foundation/speculation is sustained and it is ordered STRICKEN. F & G's objection to the fourth sentence of paragraph 37 is sustained on the grounds of impermissible legal conclusion and lack of foundation/speculation and this sentence is ordered STRICKEN. Objections to the first, second, and third sentences are overruled.

F & G's objection to the first sentence of paragraph 38 is overruled but the objection to the second sentence is sustained as conclusory/lack of foundation/speculation and it is ordered STRICKEN. The objection to paragraph 41 is overruled on the grounds of relevance and impermissible legal conclusion, as Walthall is testifying to his opinion of whether the "unwinding" was "reasonable." F & G's objection to paragraph 42 is sustained as impermissible legal conclusion and it is ordered STRICKEN. The objection to the first sentence of paragraph 43 is sustained on the ground of lack of foundation/conclusory and it is ordered STRICKEN. The reference to defamation in the fifth sentence of paragraph 44 is ordered STRICKEN as impermissi-

ble legal conclusion. The other objections are overruled.

The objection to paragraph 46 on the grounds of impermissible legal conclusion and lacking in foundation and personal knowledge is sustained and it is ordered STRICKEN. F & G's objection to paragraph 47 is sustained on the grounds of lack of foundation and personal knowledge and it is ordered STRICKEN. The objection to paragraph 48 as impermissible legal conclusion is sustained and it is ordered STRICKEN. F & G's objection to paragraph 49 as impermissible legal conclusion is sustained and it is ordered STRICKEN. The objection to paragraph 50 is sustained on the ground of lack of foundation and it is ordered STRICKEN.

### B. Declaration of William Murray

F & G's objection to paragraph 5 of the Declaration of William R. Murray is overruled.

### C. Declaration of John Galliot

F & G's objection to paragraph 4 of the Declaration of John Galliot ("Galliot Decl.") on the grounds of relevance and lack of foundation/conclusory is overruled. F & G's objection to paragraph 5 is overruled. F & G's objections to paragraphs 6, 7 and 8 based on hearsay are overruled as party admissions. The objection to paragraph 10 based on lack of foundation/conclusory and speculation is overruled.

### D. Declaration of Mark Cisneros

F & G's objection to paragraph 5 of the declaration of Mark Cisneros on the ground of lack of foundation is overruled. The objections to paragraphs 6, 7, 8 and 9 are overruled. F & G's objection to paragraph 11 is sustained as hearsay and it is ordered STRICKEN. The objection to paragraph 12 is overruled. The objection to paragraph 13 on the ground of lack of foundation/conclusory is overruled.

### E. Declaration of Ira Tsujii

F & G's objection to paragraph 2 of Ira Tsujii's declaration on the ground of relevance is overruled. The objection to paragraph 3 is overruled. The objection to paragraph 4 as vague/ambiguous and lack of foundation is sustained and it is ordered STRICKEN. F & G's objection to paragraph 6 is sustained on the grounds of improper opinion testimony and lack of foundation/conclusory and it is ordered STRICKEN.

### F. Declaration of Dale Campbell

F & G's objection to paragraph 2 of the Declaration of Dale Campbell as irrelevant is overruled. The objection to paragraph 3 is overruled. The objection to paragraph 4 as vague/ambiguous and lack of foundation is sustained and it is ordered STRICKEN. F & G's objection to paragraph 5 is sustained on the grounds of improper opinion testimony and lack of foundation/conclusory and it is ordered STRICKEN.

### G. Declaration of Bob Diamond

The Court overrules F & G's objection to paragraph 5 of the Declaration of Bob Diamond on the grounds of lack of foundation/conclusory and impermissible legal conclusion. The objection to Paragraph 6 is overruled. F & G's objection to paragraph 7 on the ground of hearsay is overruled as a party admission. The objection to paragraph 8 is sustained as hearsay and it is ordered STRICKEN. F & G's objection to paragraph 9 on relevancy is overruled.

### H. Declarations of Richard Mintzer, David R. King, and James Griffin.

F & G objects to the expert declarations and reports submitted by EPIS in support of its opposition to F & G's motion for summary judgment. The objections to the

expert declarations, and the reports attached to those declarations, are sustained. The declarations fail to set forth admissible evidence of the experts' qualifications or competency to provide their expert opinions, the declarations fail to lay the proper foundation for the contents of the statements contained in the expert reports, and the declarations fail to attach any documents, much less the key documents, relied upon by the experts in formulating their reports. *See, e.g., School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255 (9th Cir.1993). Moreover, the reports themselves are not submitted under penalty of perjury as required by Rule 59(e), the reports fail to lay the proper foundation for the experts' testimony, and the reports generally offer only conclusory statements as to the legal meaning of the ultimate facts. The expert declarations and reports, therefore, are ordered STRICKEN from the record.

## II. Motion for Summary Judgment

F & G moves for summary judgment as to the causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and defamation/trade libel.

### A. Breach of Contract

██ Under California law, the elements of a breach of contract claim are: (1) the existence of a contract; (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damage to plaintiff. *See Reichert v. General Ins. Co.*, 68 Cal.2d 822, 830, 69 Cal. Rptr. 321, 442 P.2d 377 (1968). F & G asserts that EPIS cannot demonstrate a prima facie case of actual breach of the contract or damages flowing from a breach and, therefore, summary judgment should be granted to F & G on this cause of action.

### i. Breach

██ F & G argues that EPIS cannot prove the prima facie element of an actual breach of contract because F & G complied with Section 22 of the GAA. Section 22 of the GAA provides:

> Termination: This Agreement may be terminated by either party upon 30 days notice in writing by ordinary mail to the last known address of the other party, or may be terminated by the Company immediately for cause.

*See* GAA § 22. F & G asserts that on March 19, 1999, F & G sent EPIS 30 days written notice of its intent to terminate the GAA. *See* Wilkey Decl. ¶ 14; Exh. C. The letter does not explicitly state whether the termination is for cause and thus immediate, or not for cause and subject to the 30 days notice period. However, F & G's subsequent communications, by letters dated April 16, 1999 and April 22, 1999, made it explicit that F & G exercised its right under Section 22 to terminate the GAA "without cause" by its March 19, 1999 letter. *See* Wilkey Decl., Exhs. D & E.

In support of its argument that it terminated the GAA without cause, F & G argues that its conduct between March 19, 1999 and at least April 19, 1999 is consistent with a "without cause termination." F & G argues first that California Insurance Code section 1707 required F & G to notify the State Department of Insurance of EPIS' termination. The "Action Notice of Termination" that F & G sent to the California Department of Insurance on March 26, 1999, informed the Department that the effective date of EPIS' termination was April 19, 1999, thirty days after the notice of termination was sent to EPIS. *See* Declaration of Cindy McGarity ("McGarity Decl."), Exh. B. Additionally, F & G asserts that it continued to process EPIS agents' applications for insurance and make payments or credits on commis-

sions to EPIS after the notice. Had the GAA been terminated for cause, F & G asserts that it would not have processed those applications and paid or credited the commissions. *See* McGarity Decl., ¶¶ 5–6; *see also* Deposition of Harry N. Stout ("Stout Depo."), Vol II, p. 43, line 7—page 44, line 2 (indicating that had the termination been for cause, F & G would have stopped all "in-house" business with EPIS).

EPIS does not dispute that F & G's April 16 and April 19, 2001 letters clearly state that F & G was exercising its right under Section 22 to terminate without cause on 30 days notice. *See* F & G's Statement of Fact ¶¶ 10, 11; EPIS' Statement of Fact ¶¶ 10, 11. Nor does EPIS address the fact that F & G notified the California Department of Insurance that EPIS was terminated as of April 19, 1999, 30 days after the March 19, 1999 termination letter. *See* F & G's Statement of Fact ¶ 9; EPIS' Statement of Fact ¶ 9. While EPIS asserts that it did not continue to receive cash payments from F & G based on new policies or renewals, EPIS

does not contest by admissible evidence that from March 19, 1999 to April 19, 1999:(1) F & G continued to accept and process applications for insurance products by EPIS agents;[2] (2) F & G continued to credit EPIS with renewal commissions;[3] or (3) F & G's assertion that had EPIS had been terminated for cause, F & G would not have continued to process the applications or credit EPIS with commissions. *See* F & G's Statement of Fact ¶ 12; McGarity Decl. ¶¶ 5, 6 (stating that F & G's policy is not to pay renewal commissions to any agent who was terminated for cause and that from March 19, 1999 F & G continued to conduct business with EPIS under the terms of the Agreement by processing 47 applications for insurance and paying EPIS $39,546.63 in commissions that EPIS had earned); Stout Depo., Vol. II at 43–44 (noting that if EPIS had been terminated for cause, "all business in-house would have been stopped. It would have been sent back . . . .").

Rather, EPIS argues that the March 19, 1999 letter was a "for cause" termination.[4]

**2.** In an attempt to raise a question of disputed fact on this point Steve Walthall declared, in a paragraph that has been stricken from the record, that F & G returned to EPIS agents contracts that F & G failed to process during the March 19 through April 19, 1999 period, even though those applications were received by F & G as early as February 26, 1999. The undisputed evidence establishes that F & G continued to process applications from EPIS agents for insurance products until April 19, 1999. The documents referenced by Walthall in his declaration, and attached as Exhibit 33 without sufficient authentication, are not applications for insurance products but applications for appointments as general agents. There is no evidence that F & G's policy was to continue to process applications for the appointment of EPIS' agents with F & G when F & G's relationship with EPIS and its agents was being terminated on April 19, 1999. The documents in Exhibit 33, therefore, are irrelevant.

**3.** The Declaration of Steve Walthall indicates only that EPIS "stopped paying commissions directly to EPIS. Instead, F & G used any cash flow due to EPIS to offset EPIS' annualization accounts." *Id.* ¶ 37. This statement does not counter F & G's assertion and indicates only that EPIS did not receive a check from F & G but continued to receive credit. Exhibit 21, referenced by ¶ 37 of the Walthall Declaration, has not been authenticated and the Court will not rely on it.

**4.** At oral argument, counsel for EPIS also relied upon the testimony of Mr. Stout in support of its argument that EPIS was terminated for cause. Review of Mr. Stout's deposition testimony, however, does not support EPIS. Mr. Stout consistently testified that EPIS' termination was a 30 day notice termination and not for cause. At most, Mr. Stout testified that the March 19, 1999 letter was ambiguous in its statement that EPIS was terminated pursuant to Section 22 of the GAA. However, the letter in combination with

To support its allegation, EPIS relies solely on the allegation that instead of following the "customary" rule in the insurance industry that unless a marketing organization ("MGA") like EPIS is terminated for cause, the MGA's down-line agents are not "recontracted" to another MGA for twelve months following the termination of their MGA or twelve months following the agents' last sale. *See* Deposition of Patricia J. Cole ("Cole Depo") at 9, 19, 24, 26 (indicating that EPIS agents who contacted F & G were told that they would be recontracted after the 30 day notice termination period and explaining that this was unusual given F & G's normal guideline which was to wait 12 months to recontract after a MGA's termination).[5]

■ This argument, however, fails to demonstrate a question of material fact on the issue of actual breach. To the extent that EPIS seeks to argue that the explicit terms of the contract were altered or amended by either (1) implied standards adhered to by F & G or the insurance industry, or (2) by an explicit or implied agreement between EPIS and F & G, this argument fails. *See* SAC ¶¶ 37, 39. The GAA explicitly provided that either EPIS or F & G could terminate the agreement with 30 days notice without cause and without further restriction. The GAA also provided that the agreement could only be modified in writing and that the agreement could not be modified by any acquiescence in practices or courses of dealing by the Company contrary to the terms or conditions of the agreement. *See* GAA § 23. In the absence of any case law cited by EPIS to support its breach of contract argument, EPIS cannot escape the explicit terms of the contract which allowed F & G to terminate the GAA without cause and on 30 days notice.[6]

The Court concludes that EPIS has failed to raise a question of material fact to counter F & G's assertion that there was

---

the actions of F & G made it clear that the termination was not for cause. *See* Stout Depo., Vol II at 42, 44.

5. EPIS has submitted the declarations of five sales agents stating that they were reassigned and reappointed by F & G. *See* Tsujii Decl., Campbell Decl., Galliot Decl., Cisneros Decl., and Diamond Decl. The declarations of Tsujii, Campbell and Galliot do not specify when they were reassigned by F & G. The supplemental declaration of Patricia Cole ("Cole Supp. Decl.") indicates that these three individuals were all reassigned over 12 months after F & G was terminated or 12 months after their last sale, consistent with F & G's policy. *See* Cole Supp. Decl. ¶ 3. With respect to the Cisneros Declaration, Mr. Cisneros states that he was successful in recontracting with F & G within 60 days of Cisneros' termination. Cisneros Decl. ¶ 14. Ms. Cole declares that Mr. Cisneros was never reappointed by F & G. *See* Cole Supp. Decl. ¶ 3. With respect to Mr. Diamond, while he declares that he was directly appointed with F & G on April 7, 1999, he does not declare when he was terminated from F & G or when his last

sale on behalf of EPIS occurred. Diamond Decl. ¶¶ 3, 5, 6.

6. EPIS' reliance on *R.J. Kuhl Corp. v. Sullivan,* 13 Cal.App.4th 1589, 1602, 17 Cal. Rptr.2d 425 (1993) is misplaced as a "fixed and established usage" from the relevant industry is only of relevance in interpreting a contract where a court is faced with ambiguous contract terms or the contract is susceptible to more than one meaning. The language at issue in the GAA is not ambiguous. *See also Southern Pacific Transportation Co. v. Santa Fe Pacific Pipelines, Inc.,* 74 Cal. App.4th 1232, 1240, 88 Cal.Rptr.2d 777 (1999) ("Indeed, where there is a fixed and established usage and custom of trade, the parties are presumed to contract pursuant thereto. Thus, courts can rely on usage and custom to imply a term where the contract itself is silent in that regard." (internal citations omitted)); *California Lettuce Growers v. Union Sugar Co.,* 45 Cal.2d 474, 482, 289 P.2d 785 (1955) (evidence of usage is always admissible to supply a deficiency or as a means of interpretation where it does not alter or vary the terms of the contract).

no actual breach by F & G of the terms of the GAA.

### ii. Damages

■ F & G also argues that EPIS cannot prove the prima facie element of damages suffered by EPIS as a proximate result of an alleged breach of the GAA because, assuming that F & G failed to properly notify EPIS of the termination and therefore breached the agreement, EPIS' damages would be limited to thirty days. Under California law, F & G argues, the measure of damages for any breach of contract that is terminable upon the giving of notice is the amount of money the party who breaches the contract would have been required to pay had it exercised its option to terminate. *See T.L. Martin v. U–Haul Company of Fresno*, 204 Cal. App.3d 396, 410, 251 Cal.Rptr. 17 (1988) (because of a 30 day notice provision, party limited to damages potentially accruing during a 30–day period after the breach); *see also Pecarovich v. Becker*, 113 Cal. App.2d 309, 248 P.2d 123 (1952).

As F & G continued to process applications and credit commissions to EPIS thirty days after the March 19, 1999 letter, F & G argues that EPIS has not and cannot have sustained any damages from F & G's breach. *See* McGarity Decl., ¶¶ 5–6; Stout Depo., Vol. II at 43, line 7—44, line 2. As discussed above, EPIS has not submitted admissible evidence to counter F & G's assertion that it continued to process applications for policies from EPIS agents and credit EPIS with commissions. Therefore, assuming that F & G improperly notified EPIS of the termination and breached the GAA, EPIS has failed to raise a material question of fact as to whether it suffered damages during the

March 19, 1999 through April 19, 1999 thirty day notice period. F & G's motion for summary judgment on the breach of contract claim is GRANTED.

### B. Breach of Implied Covenant of Good Faith and Fair Dealing

■ In the SAC, EPIS alleges that F & G's contractual right to terminate EPIS was restricted by the implied term that "F & G would not arbitrarily terminate the General Agent's Agreement under Section 22 or any other section of the Agreement. The implied covenant of good faith and fair dealing, coupled with the terms, conditions and purposes of the General Agent's Agreement, also impliedly limited F & G's ability to terminate the General Agent's Agreement upon 30 days notice." SAC ¶ 50. F & G argues that these implied terms are contrary to the express terms of the Agreement and, as such, EPIS' cause of action for breach of the implied covenant must fail as a matter of law.[7]

■ "The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made." *Guz v. Bechtel Nat. Inc.*, 24 Cal.4th 317, 349, 100 Cal.Rptr.2d 352, 8 P.3d 1089 (2000). However, the "covenant thus cannot be endowed with an existence independent of its contractual underpinnings." *Id.* (internal quotations omitted). Therefore, it "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Id.*

■ Additionally, as to acts authorized by the express provisions of the contract, no covenant of good faith can be implied which would forbid those express acts.

---

7. EPIS alleges in the SAC that F & G was precluded from terminating the GAA at the insistence of other general agents, in violation of public policy, in unlawful restraint of trade, or in violation of any statute or regulation.

*See* SAC ¶ 51. However, as argued by F & G, EPIS has failed to present any evidence to support these specific allegations in opposition to F & G's motion for summary judgment.

*See Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.,* 2 Cal.4th 342, 374, 6 Cal.Rptr.2d 467, 826 P.2d 710 (1992) ("We are aware of no reported case in which a court has held the covenant of good faith may be read to prohibit a party from doing that which is expressly permitted by an agreement. On the contrary, as a general matter, implied terms should never be read to vary express terms."); *PMC, Inc. v. Porthole Yachts, Ltd.,* 65 Cal.App.4th 882, 76 Cal. Rptr.2d 832 (1998) (where acts and conduct authorized by the express provisions of the contract, no covenant of good faith and fair dealing can be implied which forbids such acts and conduct).

EPIS does not address the case law relied upon by defendant and proffers no case law addressing the implied covenant that supports its argument. EPIS appears to argue in opposition to F & G's motion that the implied covenant of good faith and fair dealing at issue does not prevent F & G from arbitrarily terminating EPIS under the 30 day notice provision, as plead in the SAC, but that the implied covenant prevents F & G from terminating the GAA and then reassigning EPIS' agents within 12 months of EPIS' termination. *See* Oppo. at 9 ("[b]ecause even if there had been a fair 30 day termination, theft of sub agents cannot be a proper purpose"), 12 ("[t]he implied Covenant of Good Faith asserted here is actually an F & G policy, and F & G's own witnesses raise issues showing that the implied covenant in this case would not be inconsistent with the agreement, but would be necessary for the General Agency

Agreement to function."). However, the termination and alleged recontracting of EPIS' agents in violation of any F & G or industry policy not to recontract for 12 months is not alleged as a violation in the SAC, and it is quite different from EPIS' allegation that F & G breached the implied covenant of good faith and fair dealing by arbitrarily terminating the GAA.

The Court finds that EPIS has failed to raise a genuine issue of material fact on its claim for breach of the implied covenant of good faith and fair dealing and summary judgment on this cause of action is GRANTED to F & G.

## C. Defamation/Trade Libel

 F & G argues that EPIS cannot establish all of the essential elements for defamation or trade libel.[8] To succeed on a claim for defamation, the plaintiff must prove that the defamatory matter was published or communicated to some third person. It is for the Court to determine "as a question of law whether a statement is reasonably susceptible of a defamatory interpretation; if the statement satisfies this requirement, it is for the jury to determine whether a defamatory meaning was in fact conveyed to the listener or reader." *See Kahn v. Bower,* 232 Cal.App.3d 1599, 1608, 284 Cal.Rptr. 244 (1991).

 F & G asserts that EPIS' grounds for defamation and trade libel rest on the contents of the letters F & G sent to EPIS' sales agents notifying them that F & G was terminating their individual agreements,[9] and comments made by Pa-

---

8. The difference between defamation and trade libel is that an "action for defamation is designed to protect the reputation of the plaintiff,' and the judgment vindicates that reputation, whereas the action for disparagement [trade libel] is based on pecuniary damage and lies only where such damage has been suffered." *Leonardini v. Shell Oil Company,* 216 Cal.App.3d 547, 573, 264 Cal.Rptr. 883 (1989).

9. The SAC alleges that F & G defamed EPIS by "publishing false and defamatory accusations that EPIS engaged" in illegal activity, SAC ¶ 60, "accused EPIS of selling bogus leads, re-selling leads, and claimed that EPIS was offering the 110% commission to recruit premium 'down-line' agents only as a 'bait and switch,'" SAC ¶¶ 61, 65, and that the "false, concocted and pretextual reasons [for

tricia Cole concerning EPIS during her conversations with sales agents.[10]

F & G argues that it is entitled to summary judgment as a matter of law because the letters sent to EPIS' agents contain no language that could be construed as defamatory and because Ms. Cole did not publish any defamatory statements regarding EPIS.

The letters that F & G sent to EPIS' agents stated in part:

In accordance with the terms of your agreement dated [date] section 22, we are exercising our right to terminate that agreement, by giving you this 30 Day notice, due to a marketing decision.

We ask that you return, to my attention, any and all marketing, sales, and agent contract information you may have for F & G Life in addition to any and all

administrative materials you may have in your possession.

*See* Declaration of Patricia Cole ("Cole Decl."), Exh. A ("Termination Letter"). Because the letters did not mention EPIS or the circumstances surrounding the termination of the GAA, F & G argues that there is nothing defamatory about the language contained in these letters. With respect to the statements of Ms. Cole, Ms. Cole declares that she did not have any knowledge about why EPIS was terminated, and therefore could not make any defamatory remarks about EPIS or the termination. *See* Cole Decl. ¶ 4.

EPIS responds that the agents who received the letters and spoke with Ms. Cole about their terminations "took" the letters and statements of Ms. Cole as implying that EPIS' termination was for cause. *See* Oppo. at 14. EPIS relies on the declarations of six agents to supports its allegations.[11] The Declaration of Mark Cisneros

---

EPIS' termination] were broadcast and published by F & G directly and indirectly to insurance agents and to EPIS enrolled agents in particular. F & G canceled all of the contracts of EPIS enrolled agents. F & G gave the agents defamatory reasons for cancellation which were intentionally designed to defame and damage EPIS." SAC ¶ 66. In its opposition, EPIS focuses solely on the content of the letters sent by F & G to the agents and the comments that Ms. Cole made to the agents. There is no evidence to support the allegation that F & G accused EPIS of engaging in illegal activity, selling bogus leads, reselling leads, or offering the 110% commission to recruit premium "down-line" agents only as a "bait and switch." Additionally, to the extent that EPIS is alleging that Ralph Abate defamed EPIS in a conversation between Mr. Abate and Mr. Walthall, F & G argues that EPIS cannot prove the requisite element of "publication" for the torts alleged in this context, *see* Motion at 24, and EPIS does not contest this point or otherwise present any evidence to support this allegation.

10. At oral argument EPIS relied heavily on the deposition testimony of Mr. Stout in sup-

port of its defamation/trade libel cause of action. Counsel for EPIS repeatedly stated that Mr. Stout admitted in his deposition that the March 19, 1999 letter sent to EPIS was defamatory in that the letter implied that EPIS' termination was for cause and implied "humongous" repercussions to EPIS. Review of Stout's testimony does not support EPIS' counsel's assertions. At most, Mr. Stout testified that the March 19, 1999 letter was ambiguous in its statement that EPIS was terminated pursuant to Section 22 of the GAA. *See* Stout Depo., Vol II at 42. Mr. Stout went on to testify that EPIS was not terminated for cause as evidenced, in part, by the fact that F & G continued to do business with EPIS. However, if EPIS' termination had been for cause, Mr. Stout testified that all in-house business would have stopped and there would have been "humongous repercussions." *Id.* at 44. In any event, the March 19, 1999 letter was sent only to EPIS. As such there was no "publication" by F & G of the letter and the letter cannot support EPIS' defamation/trade libel cause of action.

11. EPIS also relies on its expert declarations which, as discussed above, have been stricken from the record.

indicates that "[d]ue to the phrasing and the direct reference to Section 22 of my contract with F & G, I was of the impression that F & G had canceled EPIS for cause." Cisneros Decl. ¶ 5. Further, because Ms. Cole would not tell Mr. Cisneros why EPIS had been terminated, Mr. Cisneros was left "with the distinct impression that EPIS had been canceled for cause." Id. ¶ 9. The Declaration of Ira Tsujii states that "[b]ased upon the termination letter's reference to Section 22 of the Agent's Contract, I thought EPIS had been canceled for cause, and I thought I was being canceled for cause." Tsujii Decl. ¶ 3. Mr. Tsujii also states "I knew that I hadn't done anything wrong and was led to believe by F & G that EPIS had." Id. ¶ 6. The Declaration of Bob Diamond states that "[t]he F & G letter terminating my appointment with F & G led me to believe that my upline's contract (EPIS) was canceled because they had done something wrong." Diamond Decl. ¶ 5. "I called F & G and spoke to Patricia Cole, who led me to believe that my upline's contract (EPIS) was canceled because they had done something wrong." Id. ¶ 6. The Declaration of John Galliot states that he "called Pat Cole at F & G. She told me that it wasn't me who had done something wrong, but it was my upline, EPIS. Pat Cole led me to believe that EPIS' contract was canceled for cause." Galliot Decl. ¶ 5.

F & G argues that the declarations from the agents do not support an allegation that the letters, or the oral comments of Ms. Cole, defamed EPIS because the declarations do not contain any specific facts to support the essential elements of this claim. Rather, the declarations discuss the "impressions" and the "beliefs" of the agents but do not provide the specific facts or words used by F & G which would support a defamation claim.

F & G contends that if the words or other matters which are the subject of a defamation action are of ambiguous meaning, or innocent on their face and defamatory only in light of extrinsic circumstances, the plaintiff must plead and prove that as used, the words had a particular meaning or "innuendo" which makes them defamatory. See Washer v. Bank of America, 21 Cal.2d 822, 828–29, 136 P.2d 297 (1943), overruled on other grounds, MacLeod v. Tribune Publishing Co., 52 Cal.2d 536, 551, 343 P.2d 36 (1959); see also Barnes–Hind, Inc. v. Superior Court, 181 Cal.App.3d 377, 388, 226 Cal.Rptr. 354 (1986) (if the reader would be able to recognize a defamatory meaning only by virtue of his or her knowledge of specific facts and circumstances, extrinsic to the publication, which are not matters of common knowledge rationally attributable to all reasonable persons, then the libel cannot be libel per se but will be libel per quod and plaintiff must specifically plead and prove the reader's special knowledge of the specific extrinsic facts to support the libel claim).

EPIS does not indicate which words used in the letter or in Ms. Cole's conversations had ambiguous meaning or, in light of extrinsic evidence, had a defamatory meaning or created a defamatory "innuendo." Rather, EPIS seems to argue that the circumstances, i.e., the failure to state in the termination letters why EPIS was terminated or the failure of Ms. Cole to state over the phone why EPIS was terminated, created the impression that EPIS was terminated for cause and this impression is defamatory. To support this aspect of its allegation, EPIS relies on its three expert declarations, which have been stricken from the record. EPIS has failed to plead and prove, through the agents' declarations, the specific extrinsic facts and circumstances which would lead the agents to recognize Ms. Cole's statements as defamatory. Rather, those declarations

include only conclusory assertions without factual support.[12]

The Court finds that the contents of the letters are not reasonably susceptible to a defamatory interpretation and that EPIS has failed to raise an issue of material fact as to whether Ms. Cole's statements were defamatory or libelous. Summary judgment, therefore, is GRANTED to F & G on EPIS' defamation/trade libel claim.

### III. Motion to Amend

██ EPIS argues that it should be allowed leave to amend the complaint to plead causes of action for fraud and for beach of an agreement to maintain and protect enrolled agents. *See* Proposed Third Amended Complaint at 22–25. The proposed causes of action are based on EPIS' "newly discovered" theory that F & G never intended to have EPIS sell the HomeCertain product and only enrolled EPIS for the purpose of securing EPIS' sales agents (or down-line agents) for themselves and for F & G's preferred MGAs. Plaintiff argues that, in part because F & G refused to tell EPIS why the GAA had been terminated, plaintiff did not discover this true reason for the termination of the GAA until the November 8, 2000, deposition of Mr. Stout. The newly discovered evidence relied on by plaintiff

includes (1) testimony from Stout that F & G had given the HomeCertain product to other agencies in a "phased" roll out; (2) F & G never intended to give EPIS the product but allowed Abate and others to induce EPIS to spend money enrolling agents to handle the HomeCertain product;[13] and (3) despite written assurances from F & G that F & G would refer EPIS agents back to EPIS, EPIS agents who contacted F & G directly were referred to F & G's preferred MGAs. *See* Motion to Amend at 4–5.

F & G opposes EPIS' motion on the grounds that the proposed amendment is untimely and allowing amendment would be prejudicial to F & G. Prior to this point, the causes of action involved in this case have gone through many incarnations. As noted in the Court's May 4, 2001 Order, EPIS filed a complaint, based on same the allegations raised in this case, against F & G in federal court on August 24, 1999. That complaint alleged causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, defamation/trade libel, violation of the Sherman Anti-trust Act and the Robinson–Patman Act, and interference with prospective economic advantage. On January 11, 2000, EPIS and F & G stipulated that

**12.** On July 23, 2001, EPIS submitted to the Court deposition testimony which EPIS asserts supports the argument that Mr. Stout published false and defamatory statements about EPIS. The Court has reviewed the deposition transcript of Mr. Ivan O.B. Morse, taken in the state court proceeding on July 13, 2000, and finds that the deposition testimony does not raise a material issue of fact precluding summary judgment on the defamation/libel cause of action. First, while Mr. Morse states that he learned that F & G told agents that EPIS was terminated because they had "replaced policies, done bait-and-switch tactics," Mr. Morse cannot identify the names of these agents or even the approximate number of agents he spoke with. *See* Depo. at 25–26. Second, the deposition testimony that

makes reference to Mr. Morse's memorandum documenting a conversation Mr. Morse had with Jim Lehmann, indicates only that Mr. Stout allegedly told Mr. Lehmann that EPIS was terminated because he was "fed up" with EPIS. *Id.* at 49–50. Putting aside the hearsay and best evidence issues raised by this testimony, it does not create a material issue of fact.

**13.** The Court notes that Mr. Stout did not testify that F & G never intended to give the HomeCertain product to EPIS, but that at the time EPIS began to advertise the HomeCertain product to its sales agents, EPIS has not been "contracted" by F & G for the product. *See* Stout Depo., Vol. I at 74, 99, 199.

EPIS' Sherman and Robinson–Patman Act claims were to be dismissed with prejudice and that the remaining causes of action were to be dismissed without prejudice. *See* Declaration of Henry C. Wang in Support of F & G's Opposition to Plaintiff's Motion to Amend ("Wang Amend Decl."), Exh. C at 1–2. The parties further agreed that the complaint "will be remanded to Contra Costa Superior Court, and will only include the causes of action for breach of contract, breach of implied covenant of good faith and fair dealing, trade libel and defamation." *Id.* at 2. On January 14, 2000, this Court, based on the parties' stipulation, ordered the Sherman and Robinson–Patman acts claims dismissed with prejudice and dismissed the remaining causes of action without prejudice. *See* January 14, 2000 Order in Case No. 99–3964 SI. The Court found that the action could not be remanded, but the parties should instead file an action in state court. *Id.*

On March 20, 2000, EPIS filed a state court action against F & G alleging causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, defamation and trade libel, unfair business practices and interference with prospective economic advantage. *See* Wang Decl., Exh. E. In the First Amended Complaint, EPIS reasserted a claim for unfair business practices. F & G argued in state court that pursuant to the parties' January 11, 2000 stipulation, EPIS was barred from alleging the unfair business practices claim. The state court granted F & G's motion to strike EPIS' cause of action for unfair business practices without leave, pursuant to the stipulation. *See* Wang Decl., Exh. H at 2. The case was set for trial in state court on March 12, 2001.

After EPIS voluntarily requested the dismissal with prejudice of the only non-diverse defendant, F & G removed the case to federal court. EPIS filed a motion for remand and argued to this Court that EPIS was ready to go to trial in state court on March 12, 2001, and that F & G only removed the case to federal court for purposes of delay. The motion to remand was denied on May 4, 2001, but in order to respect plaintiff's assertion that EPIS was ready to go to trial, this Court set the case for trial in September, 2001. Only after the motion to remand was denied, did EPIS represent to the Court that plaintiff sought leave to file a motion to amend the complaint.

F & G argues that EPIS' motion to amend is untimely on two grounds. First, F & G notes that Mr. Walthall, the CEO and President of EPIS, stated in his July 2000 deposition that EPIS believed that F & G terminated EPIS in order to steal EPIS' agents. *See* Declaration of Henry C. Wang in Opposition ("Wang Oppo. Decl."), Exh. B, Deposition of Steven Walthall ("Walthall Depo.") at 137 (EPIS wanted "to make sure that F & G wasn't going to steal our agents, which they ended up doing anyway."). With respect to EPIS' contention that newly discovered evidence from Mr. Stout's deposition caused EPIS to understand that F & G never intended EPIS to sell the HomeCertain product, F & G notes that EPIS made this discovery on November 8, 2000, but waited to file its motion for leave to file an amended complaint until January 24, 2001 in state court. The motion was scheduled to be heard on March 2, 2001, after the state court discovery cut-off and only ten days before trial. F & G argues that EPIS has no excuse for this delay in filing the motion when EPIS had the necessary information in July and November 2000.

Beyond its assertion that the evidence supporting its motion to amend was discovered in November 2000, EPIS does not explain why it waited nearly three months to file the motion to amend. This unexplained delay is significant but not

dispositive. *See Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir.1999) ("[a]lthough delay is not a dispositive factor in the amendment analysis, it is relevant, ... especially when no reason is given for the delay") (internal citations omitted).

 The Court also finds that F & G will be prejudiced if the Court allows EPIS to amend at this late date because non-expert discovery will have to be reopened and the expert discovery deadline extended to allow F & G to take discovery on EPIS' new theories when F & G has already expended significant resources in conducting expert and non-expert discovery on EPIS' current theories.[14] "A need to reopen discovery and therefore delay the proceedings supports a ... finding of prejudice from a delayed motion to amend the complaint." *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir.1999); *see also Solomon v. North American Life and Casualty Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir.1998) (finding no abuse in discretion in denial of leave to amend where motion to amend was made on eve of discovery cut-off and motion would have required reopening discovery).

Given the fact the EPIS has had numerous opportunities to discover and plead the facts that underlie its current motion to amend, that EPIS is already on its Second Amended Complaint in this action, that EPIS delayed filing its motion in state court until nearly three months after discovering the new facts, and, most importantly, because granting leave to amend would severely prejudice F & G in terms of postponing trial, reopening non-expert discovery and extending the expert discovery cut-off date, the Court DENIES plaintiff's motion to amend.

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendants's motion for summary judgment [docket # 28]; SUSTAINS in part and OVERRULES in part defendant's objections to plaintiff's evidence [docket # 58]; and DENIES plaintiff's motion to amend [docket # 32].

**IT IS SO ORDERED.**

## JUDGMENT

In accordance with this Court's Order Granting Defendants' Motion for Summary Judgment and Denying Plaintiff's Motion for Leave to Amend, dated July 27, 2001, the Court finds that defendants are entitled to judgment as a matter of law, and judgment in their favor and against plaintiff is hereby entered.

**IT IS SO ORDERED AND ADJUDGED.**

---

14. In the Court's May 7, 2001 pre-trial preparation order, the Court closed non-expert discovery with three limited exceptions relating to the (1) disclosure of plaintiff's witnesses, (2) production of plaintiff's damage documents, and (3) the supplemental deposition of Mr. Stout. *See* May 7, 2001 Order.