[No. A011966. First Dist., Div. Five. Aug. 15, 1984.]

GEORGE H. CONVERSE et al., Plaintiffs and Appellants, v.
HELEN FONG, Defendant and Respondent.

COUNSEL

Siegfried Hesse, Dodge, Reyes, Brorby, Randall & Titmus, Howard H. Jewel, Jewel & Leary and E. Elizabeth Summers for Plaintiffs and Appellants.

Eric P. Schnurmacher, Charles A. Hansen, John R. Hetland, and Hetland & Hansen for Defendant and Respondent.

OPINION

LOW, P. J.—Mutuality of remedy is not a prerequisite to granting specific performance if there is sufficient assurance of each party's performance of the agreed obligations. We remand this case to the trial court to determine if equitable considerations should otherwise justify specific performance.

In January 1978, defendant Helen Fong offered to sell the family home to plaintiffs George and Marie Converse. An agreement was reached with conditions to be satisfied. Defendant's recluse son, who lived in the home, made a rare appearance. He came forward with a $20,000 loan to help his mother pay debts which would relieve or eliminate the principle reason for defendant's sale. Defendant attempted to rescind the agreement and returned plaintiffs' deposit.

Plaintiffs sued for specific performance, which the trial court denied, and the trial court awarded Fong costs of $894. In denying specific performance, the trial court found that (1) no mutuality of remedy existed between the parties since defendant could not compel plaintiffs to perform; and (2) defendant validly rescinded the contract prior to plaintiffs' performance. On appeal, plaintiffs contend: (1) California law does not require mutuality of remedy; (2) in any event, there was a mutuality of remedy between the parties; (3) no valid reason existed for defendant's rescission of the contract; and (4) the trial court abused its discretion in refusing to award specific performance.

Plaintiffs own property abutting defendant Fong's home. For defendant, the sale would generate funds to pay state and local taxes and other personal debts owed. Defendant was represented in the negotiations by John Banker, her authorized real estate agent, to whom she owed $20,000, which was to be repaid from the proceeds of the sale.

The real estate purchase contract was negotiated and drafted by plaintiffs and Banker, then signed by plaintiffs on January 12 and by defendant on January 13, 1978. Plaintiffs deposited $3,000 of the $5,000 deposit requested and were granted additional time to obtain the balance. There were several "riders" affecting the parties' performances included in the contract. Rider 2 provided: "It is agreed that the property is to be sold in an 'as is' condition, however[,] buyer's [sic] condition the offer upon receiving and approving, at their own expense[,] a roof report and a structural pest control report. This condition to be removed within 10 days after acceptance of offer or contract is void." Rider 4 provided: "Offer is subject to seller obtain [sic] approval from attorney, accountant, and one son within five (5) working days of acceptance."

By January 18, defendant had obtained the approval of her attorney and one son. Banker wrote to plaintiffs on January 19 to advise them that the contract had been "accepted" and signed on January 13 and that although the accountant's approval had not yet been received, the sale was expected to proceed as agreed.

On January 24, 1978, plaintiffs wrote to Banker in an attempt to clarify the situation and, in particular, the meaning of "acceptance date" in rider 2. Plaintiffs stated that their understanding of "acceptance" meant unqualified acceptance without contingencies and on January 24, Banker telephoned plaintiffs agreeing with their understanding. Thus, January 13 could not be the effective acceptance date (as stated in the Jan. 19 letter) since defendant had not yet received the approval of all the three other persons as required by rider 4. Further, plaintiffs felt it would be premature to order the various reports since no unqualified acceptance had been forthcoming.

The accountant's approval was obtained on February 3 and after further discussions with two of her sons on February 5, defendant signed a letter (dated Feb. 6) to plaintiffs satisfying the rider 4 contingency. The next day, February 7, defendant's recluse son offered the $20,000 loan. A notice of rescission was delivered to plaintiffs on February 9, and their deposit of $3,000 was returned, with interest, on February 10.

At trial, Helen Fong defended her action by asserting that (1) at the time of the rescission, plaintiffs had not completed the conditions of rider 2 and

she could freely rescind in good faith; (2) the contract is unenforceable since it imposed no legal obligation on the plaintiffs to perform because their performance was contingent upon their approval of the termite and roof inspection; and (3) no mutuality of remedy existed.

## I.

██ The parties were mutually obligated to perform and the contract between them was therefore binding and enforceable. This is true notwithstanding the existence of the "satisfaction clause," rider 2, which conditioned plaintiffs' obligation to pay upon their approval of the termite and roof inspection reports. A party whose performance is subject to a satisfaction clause is under an implied duty to use good faith and diligence in performing. (*Bleecher* v. *Conte* (1981) 29 Cal.3d 345, 352 [173 Cal.Rptr. 278, 626 P.2d 1051]; *Mattei* v. *Hopper* (1958) 51 Cal.2d 119, 124 [330 P.2d 625].) Because of the duty to act in good faith, a party's promise is not illusory; rather it furnishes good consideration for the parties' agreement. (*Rodriguez* v. *Barnett* (1959) 52 Cal.2d 154, 160-161 [338 P.2d 907].) Contrary to defendant's affirmative defense, the contract did not lack mutuality of obligation as plaintiffs were not free to refuse to perform at their unrestricted pleasure. To the contrary, there existed a valid agreement, signed by both parties, which obligated them to perform when specific contingencies were satisfied. This is distinguishable from an executory contract which lacks a valid signature from an authorized party, but which is subsequently enforceable by that party's offer to perform and by bringing a specific performance action. (See 7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity, § 55, p. 5276.) Accordingly, we conclude, as did the trial court, that the contract was valid and enforceable.

## II.

Rider 2 required plaintiffs to obtain and approve the roof and termite reports within 10 days after acceptance of their offer by defendant or the "contract is void." The trial court found that defendant accepted the offer on January 13, when she signed the deposit receipt, and that plaintiffs did not satisfy the contingency in rider 2 until February 12, one month later. The trial court also found that the parties did not waive the satisfaction clause in rider 2. In that case, the contract failed by its own language and it was not necessary for the trial court to rely on any absence of mutuality of remedy.

At trial, plaintiffs argued that defendant did not accept the offer until she obtained approval of the three other individuals as provided in rider 4; this occurred on or about February 6; and the removal of the satisfaction clause

occurred on February 12, within 10 days of the "acceptance." Defendant argued that she accepted the offer on January 13 when she signed the deposit receipt. The trial court agreed. ■ We conclude that the signing of the deposit receipt did not constitute an unqualified acceptance of the plaintiffs' offer, but was only a conditional acceptance. Civil Code section 1585 provides: "An acceptance must be absolute and unqualified, or must include in itself an acceptance of the character which the proposer can separate from the rest, and which will conclude the person accepting. A qualified acceptance is a new proposal." Defendant's acceptance of plaintiffs' offer was not absolute, but was made expressly contingent on the approval of three persons who were not parties to the contract. By making her acceptance subject to this other event, defendant introduced a new term into the contract and no contract arose until defendant received the approval of these other persons. (See *Superior Bedding Co.* v. *Erenberg* (1961) 193 Cal.App.2d 86 [13 Cal.Rptr. 903].) Under these circumstances, defendant did not "accept" the offer until she obtained approval of her son, accountant, and her attorney on or before February 6. Since the trial court found that plaintiffs removed the contingency in rider 2 on February 12, this action was taken within ten days of the unqualified "acceptance" date. Plaintiffs timely satisfied the requirements of rider 2 and the contract did not terminate by its own terms.

Defendant unilaterally tried to rescind. The court erroneously concluded that defendant had the right to withdraw from the contract because plaintiffs had not fully performed at the time the notice of rescission was tendered. Plaintiffs and defendant dealt at arms length and agreed upon a fair purchase price. There is no suggestion that plaintiffs obtained defendant's assent through misrepresentations, concealment, circumvention, or unfair practices. The fact that her financial condition changed after she agreed to sell her house cannot be attributable to plaintiffs and does not permit a rescission of the otherwise binding contract.

### III.

■ Mutuality of remedy is no longer strictly required under California law.[1] If otherwise equitable, specific performance may be refused only if there is not sufficient assurance that the defendant will receive the performance promised to her.

---

[1]Defendant has submitted supplemental citation to *Tamarind Lithography Workshop, Inc.* v. *Sanders* (1983) 143 Cal.App.3d 571, 575, 577 [193 Cal.Rptr. 409], as support for her argument that mutuality of remedy is a prerequisite of an award for specific performance. Mutuality of remedy in that case was not explored as the court found that the plaintiff had fully performed under the contract. We note that the *Tamarind* court ignored the Supreme Court cases which dispense with the mutuality of remedy requirement. (See *Bleecher* v. *Conte, supra,* 29 Cal.3d at p. 353; also *Ellis* v. *Mihelis* (1963) 60 Cal.2d 206, 215 [32 Cal.Rptr. 415, 384 P.2d 7].)

Civil Code section 3386 was amended in 1969 to provide that "[n]otwithstanding that the agreed counterperformance is not or would not have been specifically enforceable, specific performance may be compelled if: [¶] (a) Specific performance would otherwise be an appropriate remedy; and [¶] (b) The agreed counterperformance has been substantially performed or its concurrent or future performance is assured or, if the court deems necessary, can be secured to the satisfaction of the court." (See Stats. 1969, ch. 156, § 1, p. 410.) This amendment discarded the rigid requirement of mutuality in favor of a flexible rule that allows courts to ensure equity is done to both parties. Mutuality may be achieved because the party who brings the specific performance action submits "himself to the jurisdiction of equity and thereby enables the court to assure performance by him." (*Ellis* v. *Mihelis, supra,* 60 Cal.2d at p. 216.) Thus, mutuality is centered around the notion of a court's ability to adjust the equities in the case and ensure the fair treatment of both parties.

In denying specific performance because of lack of mutuality of remedy, the trial court relied on *Nason* v. *Lingle* (1904) 143 Cal. 363 [77 P. 71] and *Hay* v. *Mason* (1904) 141 Cal. 722 [75 P. 300]. These cases are distinguishable. In *Nason,* husband/seller contracted with defendant to exchange his wife's property for defendant's, but husband was not legally authorized to make the contract. Defendant subsequently conveyed his property to another person, and withdrew from the contract prior to tender of the deed by the wife. Suit for specific performance by the husband and wife was rejected for lack of mutuality of remedy since defendant could not enforce the transfer of the wife's property at the time he withdrew from the contract. (*Nason* v. *Lingle, supra,* at pp. 366-367.)

In *Hay* v. *Mason, supra,* 141 Cal. 722, defendant accepted plaintiffs' offer to exchange their respective parcels of land. The option was irrevocable for 15 days and afterwards remained in effect until withdrawn. After the 15 days had passed, but before plaintiffs tendered the deed, defendant withdrew from the contract. Plaintiffs' action for specific performance was denied because at the time defendant withdrew, defendant could not be compelled to perform. (*Id.,* at p. 723.) These cases are not similar and their restrictive views concerning the rule of mutuality of remedy have been criticized. (See *Ellis* v. *Mihelis, supra,* 60 Cal.2d at p. 216; see also *Bleecher* v. *Conte, supra,* 29 Cal.3d at p. 353.)

### IV.

■ There is a presumption that a breach of contract to sell real property cannot be adequately relieved by pecuniary compensation. (Civ. Code, § 3387.) However, the presumption is not conclusive and the court may

consider the equities in the case in determining whether damages are indicated. (See *Remmers* v. *Ciciliot* (1943) 59 Cal.App.2d 113 [138 P.2d 306].) The trial court may grant plaintiffs' request for specific performance if appropriate. Fairness and reasonableness of the contract is determined as of the time the parties entered into the agreement. (See *Ellison* v. *Ventura Port District* (1978) 80 Cal.App.3d 574, 582 [145 Cal.Rptr. 665].)

■ Defendant claims that the trial court properly denied specific performance in light of plaintiffs' failure to comply with the strict terms of the contract and tender the full $5,000 deposit until after defendant withdrew from the contract. Plaintiffs deposited $3,000 of the agreed upon $5,000 on January 13 and defendant's agent agreed to allow plaintiffs until January 20 to raise the remaining $2,000. Plaintiffs obtained the money from the sale of mutual funds, but the transfer of the funds was not completed until February 17, at which time plaintiffs tendered the funds to defendant, who refused the tender. Until the time of the rescission, neither defendant nor her agent indicated any urgency in receiving the balance of the deposit. The trial court found that the delay in tendering the balance of the deposit was immaterial; that the reason defendant requested the deposit of $5,000 in the first place, was to convince the state Franchise Tax Board that the sale was likely to be completed and to delay a forced tax sale of the property; and that the purpose being fulfilled, defendant manifested no urgency in the tender of the balance of the deposit and was not prejudiced by the untimely tender. The evidence supports the trial court's conclusions.

The judgment is reversed. In view of the passage of time and of possible changed circumstances, we remand for a determination as to the appropriate remedy consistent with the views expressed in this opinion.

King, J., and Haning, J., concurred.

A petition for a rehearing was denied September 14, 1984.