[No. G018311. Fourth Dist., Div. Three. July 24, 1998.]

PMC, INC., Cross-defendant, Cross-complainant and Respondent, v. PORTHOLE YACHTS, LTD., Cross-defendant, Cross-complainant and Appellant.

## COUNSEL

Leonard Sharenow for Cross-defendant, Cross-complainant and Appellant.

Troop, Meisinger, Steuber & Pasich and Blaine Greenberg for Cross-defendant, Cross-complainant and Respondent.

OPINION

**RYLAARSDAM, J.**—This case involves the question of who is entitled to recover the deposit in an aborted boat purchase. The trial court awarded the deposit to PMC, Inc. (PMC), the buyer in the transaction. Porthole Yachts, Ltd. (Porthole), the seller, contends the trial court erred in finding PMC failed to accept a proposed modification concerning a marine survey contingency. Alternatively, Porthole argues PMC's decision to reject the survey was not made in good faith. We conclude both contentions are without merit and affirm.

FACTS

In July 1993, the parties executed a "Purchase Agreement," whereby PMC agreed to buy a 104-foot Garden motorsailer named the Arni A from Porthole in return for payment of $2.1 million and the transfer of title to a ketch named the Legend, valued at $400,000. PMC deposited $200,000 with Ardell Yacht and Ship Brokers (Ardell), a licensed ship brokerage representing it in the transaction.

The transaction was contingent on the completion of a trial run and marine survey on each vessel "to the satisfaction of" the acquiring party. A trial run means taking the vessel out to see how it handles on the water, and a marine survey involves a third party's inspection and report on the physical condition of the boat. PMC also agreed Porthole would not have to conduct a trial run or survey on the Legend until it had accepted the condition and performance of the Arni A.

Crucial to the resolution of this case is paragraph six of the parties' agreement: "Written or telex acceptance or rejection of trial run and surveys shall be made by [PMC] and received by Ardell on or before August 6, 1993. In event of rejection of trial run and/or surveys, the deposit shall be returned to [PMC] after all expenses incurred by [PMC] against Vessel have been deducted . . . , at which time this Agreement shall terminate. [PMC]'s failure to exercise his right of acceptance or rejection of trial run and/or surveys as specified shall be construed as rejection." But the agreement also provided, "if, after written acceptance of trial run, surveys, . . . [PMC] fails to pay the balance of the purchase price and to execute all documents necessary . . . for completion of his purchase . . . , the deposit . . . shall be retained by [Porthole] and Ardell as liquidated damages . . . ."

In late July, PMC conducted a trial run and obtained a survey of the Arni A. PMC accepted the trial run. On August 3, Philip Kamins, PMC's president, wrote to James Elliott, a salesman with Ardell. After noting he had

reviewed the survey and citing the need for some repair work and additional inspection costs, Kamins requested "an adjustment of $100,000.00 to the purchase price . . . ." He concluded with the statement, "If we can agree on this matter, I will be ready to Accept the Agreement to Purchase [the] ARNI A, and close the deal as soon as possible." The same day, Elliott telecopied the letter to Stuart Larsen, a salesman with Fraser Yachts, the broker representing Porthole.

On August 5, Larsen responded with a letter stating Porthole would agree to only a $50,000 reduction in the purchase price. Elliott telecopied Larsen's letter to PMC.

The next day, August 6, Kamins signed a document designated as "Addendum B," which stated: "1.) Buyer and Seller agree that a survey allowance . . . of $50,000 . . . shall be credited to the Buyer and deducted from the proceeds due the seller at the close of the transaction. [¶ 2.) Buyer and Seller agree to extend the date for Buyer's final acceptance of vessel in para. 6 of the Agreement from August 6, 1993 to 'on or before . . . August 18, 1993'. [¶ 3.) The date of close . . . of the Agreement shall remain 'on or before August 24, 1993'."

Elliott telecopied Addendum B to Larsen along with a cover letter which began as follows: "There is some good news and some delayed news. Attached is the buyer's acceptance of the $50,000 survey allowance." After describing PMC's concerns with completing the transaction, Elliott noted: "The buyer has requested that Paragraph 6 of the Purchase Agreement (acceptance of vessel) be extended to August 18, 1993. . . . [¶ I realize the problem and share in the frustration. The alternative which was discussed with the buyer was to let the contract expire . . . and come back and resurrect the offer. I don't believe anyone wants to see that."

Porthole did not sign Addendum B. The brokers began making preparations for Porthole's inspection of the Legend. But on August 16, PMC advised Ardell it would not complete the contract and demanded return of its deposit.

Ardell filed this action by interpleading the deposit with the court. PMC and Porthole filed cross-complaints asserting a right to it. After Ardell was dismissed from the action, the parties proceeded to trial on PMC's causes of action for declaratory relief and Porthole's breach of contract claim. The trial court entered judgment for PMC.

DISCUSSION

*Modification of the Contract*

██ The trial court found Addendum B did not constitute an unconditional acceptance of Porthole's $50,000 survey allowance, and since Porthole did not accept all of Addendum B's terms, the purchase agreement expired August 6. Porthole claims the record establishes PMC accepted its offer of a $50,000 reduction in the purchase price.

██ Since this case involves a written agreement and the extrinsic facts relating to its construction are undisputed, we independently review the trial court's decision. (*Transwestern Pipeline Co.* v. *Monsanto Co.* (1996) 46 Cal.App.4th 502, 512 [53 Cal.Rptr.2d 887]; *Therma-Coustics Manufacturing, Inc.* v. *Borden, Inc.* (1985) 167 Cal.App.3d 282, 294 [213 Cal.Rptr. 611].) ██ Nonetheless, we conclude the trial court properly decided the case.

The parties concede this transaction is governed by the California Uniform Commercial Code's division on sales. (Cal. U. Com. Code, § 2101 et seq.; all further statutory references are to the California Uniform Commercial Code unless otherwise indicated.) They entered into a contract for the sale of the Arni A if certain contingencies were satisfied: PMC's acceptance of the trial run and marine survey on or before August 6, 1993. Should PMC fail to timely accept either the trial run or the survey, the contract would terminate and PMC could recover its deposit.

PMC accepted the trial run. Thereafter, the parties engaged in negotiations to modify the agreement's purchase price based on the contents of the survey. The sole issue is whether these negotiations resulted in PMC timely accepting the survey.

While the Commercial Code does not require consideration to modify an agreement (§ 2209), a valid modification still requires proof of the other elements essential to the validity of a contract, including mutual assent. (*American B. M. Co.* v. *Indemnity Ins. Co.* (1932) 214 Cal. 608, 615 [7 P.2d 305].) With respect to mutual assent, section 2207, subdivision (1) states, "A definite and seasonable expression of acceptance of a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms."

PMC offered to "[a]ccept the Agreement to Purchase . . . and close the Deal" if Porthole agreed to reduce the purchase price by $100,000. Porthole

rejected this proposal and countered with a "$50,000 allowance." In response, PMC submitted Addendum B which agreed to the $50,000 allowance, but also extended the time for PMC's final acceptance of the Arni A to August 18. Addendum B did not expressly condition acceptance on Porthole's agreement to extend the final acceptance date. But the cover letter prepared by Elliott as PMC's agent, clarified Addendum B's conditional nature and placed Porthole on notice that PMC would not proceed with the transaction unless Porthole agreed to extend the time for PMC's final acceptance of the Arni A. Elliott explained there was "good" and "delayed" news concerning the survey allowance. He also noted the "alternative" to Addendum B "was to let the contract expire . . . and resurrect the offer."

The cover letter was a permissible method of expressing the conditional nature of PMC's acceptance. All that section 2207, subdivision (1) requires is a clear expression "in a manner sufficient to notify the offeror that the offeree is unwilling to proceed with the transaction unless the additional or different terms are included in the contract." (Annot., What Constitutes Acceptance "Expressly Made Conditional" Converting It to Rejection and Counteroffer under UCC § 2-207(1) (1983) 22 A.L.R.4th 939, 948, § 6.)

For example, in *Steiner* v. *Mobil Oil Corp.* (1977) 20 Cal.3d 90 [141 Cal.Rptr. 157, 569 P.2d 751], the plaintiff negotiated a 10-year gasoline purchase contract with the defendant oil company as part of a transaction to acquire a service station. During the negotiations, the plaintiff made it clear he would only consummate the purchase contract if the defendant agreed to give him a specified price discount allowance for the entire term of their agreement. When the defendant subsequently attempted to reduce the discount during the term of the contract citing a provision of its standard agreement declaring the discount to be revocable, plaintiff successfully sued to enforce the contract as originally proposed by him. In affirming, the Supreme Court noted: "As the trial court also found, Mobil did not in any way make its acceptance 'expressly . . . conditional' on Steiner's 'assent to the additional or different terms.' Chenen [Mobil's agent], in telling Steiner to go ahead with the purchase, did not suggest that Mobil had conditioned its acceptance. In returning the executed documents, Mobil *enclosed no cover letter*; again, it did not use the occasion in any way to condition expressly its acceptance." (*Id.* at p. 101, italics added.)

PMC sent Addendum B on August 6, the last day to act under the agreement's original terms. It contained an extension of the final acceptance date, a term not previously discussed by the parties. In the attached cover letter, PMC's agent clarified it included this clause as an alternative to letting the original agreement expire. Given the timing of Addendum B, its

contents and, most importantly, the cover letter emphasizing the conditional nature of PMC's acceptance, we conclude Addendum B did not constitute an acceptance under section 2207, subdivision (1). Thus, the trial court properly found PMC did not accept Porthole's survey allowance. As a result, the parties' original agreement expired by its terms August 6, since PMC had not unconditionally accepted the survey by that expiration date.

*Good Faith*

 The trial testimony reflects PMC decided not to buy the Arni A because, as a British-flag vessel with a foreign crew, it could not obtain financing to complete the purchase or charter the vessel in United States waters. Porthole argues that, even assuming Addendum B did not constitute a valid acceptance of the $50,000 survey allowance, since the only contingencies under the agreement were acceptance of the trial run and marine survey, PMC's refusal to consummate the purchase due to problems with the financing and operation of the Arni A violated the requirement that it act in good faith.

This argument is without merit. First, we doubt Porthole preserved this issue for appellate review. Generally, a party cannot raise an issue for the first time on appeal. (*Sanchez* v. *Truck Ins. Exchange* (1994) 21 Cal.App.4th 1778, 1787 [26 Cal.Rptr.2d 812]; 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 399, pp. 451-453.)

Ardell commenced this action by interpleading the deposit with the court and disclaiming any interest in it. PMC cross-complained, in part, seeking a declaration that, since Porthole did not accept its terms, no contract existed giving Porthole a right to the deposit. Porthole's cross-complaint, in part sought recovery of the deposit under a breach of contract theory. It alleged PMC "accepted the trial run" and "a $50,000.00 survey allowance to be deducted from the sale price," but breached the agreement by refusing to complete the purchase.

Trial proceeded solely on the declaratory relief and breach of contract counts. Although Porthole's counsel queried PMC's principals concerning their reasons for rejecting the Arni A purchase, Porthole concedes the witnesses at trial, including the parties' brokers, testified that, on or before August 6, 1993, PMC could reject the Arni A's trial run or marine survey for any reason and still recover its deposit.

In the statement of decision, the trial court held Addendum B did not constitute "an unconditional acceptance of the survey." The court found

Porthole needed to "accept all three paragraphs" in the addendum to modify the contract, and since it did not do so, the purchase agreement "expired by its own terms on August 6, 1993." The court made no finding concerning PMC's good faith in rejecting the survey and the appellate record does not reflect Porthole objected to the statement of decision on this ground. (See Code Civ. Proc., § 634.) Thus, the record reflects the parties never formally raised and the court never resolved the issue of whether PMC exercised good faith in rejecting the survey.

But even on its merits, PMC's argument is unavailing. In *Mattei v. Hopper* (1958) 51 Cal.2d 119 [330 P.2d 625], the Supreme Court held a contract which conditions one party's performance on his or her satisfaction does not lack consideration. Where the condition involves satisfaction concerning commercial value or quality, operative fitness or mechanical utility, the promisor's satisfaction or dissatisfaction must be tested against a reasonable person standard. If the condition involves fancy, taste or judgment, the promisor's decision must be exercised in good faith. (*Id.* at pp. 122-123.) Porthole argues the latter standard applies in this case, and since PMC failed to accept the survey for reasons unrelated to that report, good faith is lacking here.

*Mattei*'s good faith standard for contractual satisfaction clauses is an aspect of the implied covenant of good faith and fair dealing generally applicable to contracts, including contracts governed by the Uniform Commercial Code. (§ 1203; *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 371 [6 Cal.Rptr.2d 467, 826 P.2d 710]; *Converse v. Fong* (1984) 159 Cal.App.3d 86, 90 [205 Cal.Rptr. 242]; *Balfour, Guthrie & Co. v. Gourmet Farms* (1980) 108 Cal.App.3d 181, 190 [166 Cal.Rptr. 422]; *Larwin-Southern California, Inc. v. JGB Investment Co.* (1979) 101 Cal.App.3d 626, 638-640 [162 Cal.Rptr. 52].) However, while "[e]very party to a contract has a duty to act in good faith regarding contractual obligations . . . the duty to act in good faith does not alter the specific obligations of the parties under the contract." (*Balfour, Guthrie & Co. v. Gourmet Farms, supra,* 108 Cal.App.3d at p. 190.)

In *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc., supra,* 2 Cal.4th 342, 374, the Supreme Court noted, ". . . as a general matter, implied terms should never be read to vary express terms. [Citations.] 'The general rule [regarding the covenant of good faith] is plainly subject to the exception that the parties may, by express provisions of the contract, grant the right to engage in the very acts and conduct which would otherwise have been forbidden by an implied covenant of good faith and fair dealing. . . . [¶] This is in accord with the general principle that, in

interpreting a contract "an implication . . . should not be made when the contrary is indicated in clear and express words." [Citation.] . . . [¶] As to acts and conduct authorized by the express provisions of the contract, no covenant of good faith and fair dealing can be implied which forbids such acts and conduct. And if defendants were given the right to do what they did by the express provisions of the contract there can be no breach.' [Citation.]"

■■■ The parties' agreement gave PMC the right to terminate the purchase by rejecting the trial run or marine survey, and also provided that a failure to accept either contingency by August 6, constituted a rejection. The trial witnesses, including the parties' brokers, testified they understood this clause allowed PMC to terminate the agreement for any reason. Under these circumstances, Porthole cannot rely on the implied covenant of good faith to find a breach of the parties' agreement.

This analysis does not render the parties' contract illusory. In *Third Story Music, Inc.* v. *Waits* (1995) 41 Cal.App.4th 798 [48 Cal.Rptr.2d 747], the plaintiff transferred the rights to a recording artist's music to the defendant in return for a percentage of the defendant's earnings from its exploitation of the music, including a guaranteed minimum payment regardless of any marketing efforts. Under the agreement, the defendant had the complete discretion to market or refrain from marketing the music. The Court of Appeal held that under the terms of this agreement the marketing clause was not subject to the implied covenant of good faith and fair dealing. (*Id.* at pp. 806, 808.)

Noting the "inconsistency" in *Carma*'s holding "between the principle that the covenant of good faith should be applied to restrict exercise of a discretionary power and the principle that an implied covenant must never vary the express terms of the parties' agreement" (41 Cal.App.4th at p. 804), *Third Story Music* reconciled the rules by holding the agreement did not contain an illusory promise because the other consideration in the contract supported it. (*Id.* at pp. 808-809.)

The purchase agreement required PMC to deposit $200,000 with Ardell and to incur costs in order to conduct a trial run and marine survey of the Arni A. While it may be argued that these costs did not constitute a benefit to Porthole, the detriment to PMC is sufficient to constitute consideration. (Civ. Code, § 1605; 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 208, p. 217.) Thus, while the agreement, as construed by the parties, gave PMC the right to terminate the agreement for any reason by simply failing to accept either the trial run or the survey, it did not amount to an

illusory contract, because PMC provided other consideration for its termination power. Thus, we reject Porthole's reliance on the implied covenant of good faith.

## DISPOSITION

The judgment is affirmed. PMC shall recover its costs on appeal.

Crosby, Acting P. J., and Sonenshine, J., concurred.