340 F.3d 1007
 Richard L. GRIMES; Rosa L. Grimes, suing individually and on behalf of all others similarly situated and on behalf of the general public, Plaintiffs-Appellants,
v.
NEW CENTURY MORTGAGE CORPORATION, a California corporation, Defendant-Appellee.
 No. 02-15430.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 10, 2003 — San Francisco, California.
 Filed August 22, 2003.
 
 Daniel Mulligan, Jenkins & Mulligan, San Francisco, California, for the plaintiffs-appellants.
 Denise Field, Buchalter, Nemer, Fields & Younger, San Francisco, California, for the defendant-appellee.
 Appeal from the United States District Court for the Northern District of California; Phyllis J. Hamilton, District Judge, Presiding. D.C. No. CV-01-02133-JPH.
 Before John T. NOONAN, M. Margaret McKEOWN, and Johnnie B. RAWLINSON, Circuit Judges.
 Opinion by Judge NOONAN; Dissent by Judge MCKEOWN.
 OPINION
 NOONAN, Circuit Judge.
 
 
 1
 Richard L. Grimes and Rosa L. Grimes (the Grimeses) appeal the judgment of the district court in favor of New Century Mortgage Corporation (New Century). The Grimeses brought suit against New Century for violation of the Truth in Lending Act, 15 U.S.C. § 1601 et seq. (TiLA) and Federal Reserve Regulation Z, 12 C.F.R. § 226.23(a)(3) (Reg.Z) and for unfair business practices in violation of California Business and Professions Code § 17200 et seq. The district court granted summary judgment on the TiLA claim and declined to exercise jurisdiction on the California claim. Holding that there are material issues of fact as to the existence and terms of a contract, we reverse and remand to the district court.
 
 FACTS
 
 2
 The facts presented by deposition do not appear to be in dispute. They are as follows:
 
 
 3
 On February 7, 2000, the Grimeses applied to New Century for a loan of $252,800 to be secured by their residence in San Francisco. Richard Grimes indicated that he was a manager employed by the City of San Francisco; his mother, Rosa, was retired on Social Security. An unpaid balance of $200,000 from Ameriquest at 9.75% was stated to exist in a mortgage on their house. Mark Mathews, a loan officer for New Century, told them that his company could offer them the loan at a rate of interest in the range of 6% to 8% and that after paying off the existing mortgage and several unsecured debts they would have $7,200 in cash for home repairs.
 
 
 4
 On February 15, 2000, Mathews came to the home of the Grimeses and offered them a batch of documents to sign. He told the Grimeses to date the documents February 16, 2000. Among the documents that the Grimeses signed was a typewritten Loan Application for a fixed-rate loan for $252,800 for 30 years, paying off their current debts with cash to the borrowers of $7,252. Opposite "Total Loan Payments" was the number $1,239 which Mathews informed them was the monthly payment due on the New Century loan. The Grimeses also signed an Adjustable Rate Note for $252,800 with interest at 10.95%, adjustable on March 1, 2002 and every 6 months thereafter, with the initial monthly payments scheduled as $2,397. Mathews told them that New Century had "approved" their loan. He also told them that the higher figure for the monthly payments was a mistake which he would correct. He continued to tell them that the interest was in the 6%-8% range.
 
 
 5
 On February 23, 2000, New Century issued a Settlement Statement, showing debts of the Grimeses it had paid and cash to borrowers of $1,040. The Grimeses were then told by New Century that their monthly payment was $2,397. They objected to Mathews, who agreed with them and came to their house to collect the correct payment of $1,239. Mathews then disappeared. New Century sought to collect the $2,397 and began foreclosure proceedings to that end.
 
 PROCEEDINGS
 
 6
 On June 1, 2001, the Grimeses filed suit in this case, which they brought as a class action. They alleged violations of TiLA and Reg. Z and sought rescission of the loan and damages. They alleged unfair business practices under California law and sought restitution and disgorgement of profits.
 
 
 7
 After the submission of depositions and exhibits, both sides sought summary judgment. The district court noted that the Grimeses argued that no contract was formed on February 16, 2000 because there was no consent by them to the contract communicated to them by New Century. Under TiLA, a borrower has a right to rescind "until midnight of the third business day following the consummation of the transaction." 15 U.S.C. § 1635(a). Reg. Z defines consummation as "the time that a consumer becomes contractually obligated on a credit transaction." 12 C.F.R. § 226.2(a)(13). Under the Official Staff interpretation, state law determines when a borrower is contractually obliged. 12 C.F.R. Pt. 226, Supp. 1 (Official Staff Interpretations), cmt. 2(a)(13). Citing Ramsey v. Vista Mortgage Corp. (In re Ramsey), 176 B.R. 183, 187 (9th Cir. B.A.P. (Cal.1994)), the district court held that the Grimeses became "contractually obligated" on February 16, 2000 and did not rescind within three days thereof. The defendant was entitled to summary judgment. The district court declined to exercise supplementary jurisdiction over the California claim. On February 4, 2002, judgment was entered in favor of New Century.
 
 
 8
 The Grimeses filed this timely appeal of the judgment and all related orders of the district court.
 
 ANALYSIS
 
 9
 It takes two to make a contract. The Grimeses made an offer to borrow on the terms set out in the loan application. New Century made a counter-offer when Mathews tendered loan documents setting out a different interest rate and different monthly payment. It is arguable that the Grimeses accepted the counter-offer when they signed the documents tendered by Mathews. But Mathews told the Grimeses that the interest and monthly payments were incorrectly stated and would be corrected.
 
 
 10
 Under the law of California, as in most jurisdictions, no loan contract is formed if an essential element is missing. Jackson v. Grant, 890 F.2d 118, 120 (9th Cir.1989). Here, if Richard Grimes is believed, the rate of interest, an essential element, was not determined or was determined at a rate other than that to which the Grimeses agreed. We have no information as to whether the documents they signed had a provision excluding the authority of Mathews to alter their terms; indeed New Century has made no such contention.
 
 
 11
 In re Ramsey, supra, on which the district court relied, focused on the moment at which Reg. Z states that consummation occurred. But under Reg. Z consummation cannot occur until the borrower becomes "contractually obligated," and under state law, the borrower is not contractually obligated before a contract between the two parties is formed. Reg. Z does not purport to substitute "consummation" for "formation of a contract."
 
 
 12
 As Mathews was authorized or apparently authorized to commit New Century to the loan, he was authorized to communicate the rate of interest and the monthly payment. The factual issue is whether Richard Grimes is to be believed as to what Mathews said. There is an additional factual issue with respect to whether the written contract was unalterable. There may have been no agreement on the interest rate and the monthly payment.
 
 
 13
 New Century argues that here was a "condition to be satisfied" contract, and that it was bound to exercise its honest judgment and make the loan if it found the conditions satisfied. Mattei v. Hopper, 51 Cal.2d 119, 123-24, 330 P.2d 625 (1958); Converse v. Fong, 159 Cal.App.3d 86, 90, 205 Cal.Rptr. 242 (1984); Witkin, Summary of California Law I, § 735 at 666 (1990). It is not, however, the requirement that certain conditions be satisfied that may make the contract illusory. It is uncertainty as to whether New Century was committed by the documents Mathews delivered and uncertainty as to the contract's essential terms.
 
 
 14
 The dissent addresses three arguments from the Grimeses' brief that we do not adopt. The dissent does not address the effect of Mathews' representations as they are remembered by Richard Grimes. The dissent acknowledges that New Century clothed Mathews with authority and does not disavow him. If Mathews had authority and the written contract was not preemptive, the factual question that must be decided by a jury is whether Richard Grimes is to be believed. If he is believed, there was either a contract at $1,239 per month or no contract because the written contract was different.
 
 
 15
 No doubt New Century is at a considerable disadvantage because Mathews, its loan officer, has disappeared, leaving the Grimeses as the only percipients of the transaction. But New Century must bear the risk of disappointment in the agent it has chosen.
 
 
 16
 Material issues of fact as to the existence and terms of the contract remain. Accordingly, summary judgment should not have been granted New Century. The judgment of the district court is REVERSED, and the case is REMANDED for proceedings consistent with this opinion.
 
 McKEOWN, Circuit Judge, Dissenting:
 
 17
 The Grimeses may indeed have been duped by an unethical loan officer. Whether they have a claim under the Truth in Lending Act ("TILA") is another matter. TILA focuses on disclosure and does not serve as an umbrella statute for consumer protection in real estate transactions. Rather, TILA is designed to foster the informed use of credit by "assur[ing] a meaningful disclosure of credit terms." 15 U.S.C. § 1601(a). Toward that end, in a credit transaction in which the creditor retains a security interest in the consumer's principal dwelling, the consumer has the right to rescind the transaction "until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms ... together with a statement containing the material disclosures required." Id. § 1635(a). The "material disclosures," which must be made before credit is extended, include the amount financed, the finance charge, the annual percentage rate, total payments, the repayment schedule, and certain other disclosures and limitations not relevant here. 12 C.F.R. § 226.23(a)(3) n. 48; 15 U.S.C. § 1638(b).
 
 
 18
 The Grimeses do not claim that New Century failed to make any of the TILA-mandated disclosures, nor could they; New Century complied with the disclosure requirements to the letter. Instead, they argue that the loan consummation required by Regulation Z had not occurred by the time the funds were disbursed, and that the mortgage company therefore violated TILA. The Grimeses' alleged difficulties with the loan officer naturally evoke sympathy for their plight. But their belated effort to cancel the transaction cannot be sustained under well-established federal and California law.
 
 
 19
 Under Regulation Z, which specifies a lender's disclosure obligations, "consummation" of the loan occurs when the borrower is "contractually obligated." 12 C.F.R. § 226.2(a)(13). The point at which a "contractual obligation ... is created" is a matter of state law. 12 C.F.R. pt. 226, Supp. 1 (Official Staff Interpretation), cmt. 2(a)(13). Under California law, a contract is formed when there are (1) parties capable of contracting, (2) mutual consent, (3) a lawful object, and (4) sufficient cause or consideration. Cal. Civ.Code § 1550. The parties agree that the third factor is not at issue. As to the other elements, they disagree as to the legal effect of the undisputed facts.
 
 
 20
 I first address the majority's assertion that Mathews may not have had authority to contract for New Century and that New Century was therefore not contractually obligated. It is revealing that this argument was not raised by the Grimeses, who have able and articulate counsel. Indeed, in their briefs, they state several times that the parties agree that there are no material issues of fact in dispute. The Grimeses characterize Mathews as a loan officer for New Century, and draw no distinction between Mathews' representations and representations by New Century. Mathews was the only New Century agent with whom the Grimeses dealt, and he arrived at their house to complete the loan bearing multiple documents representing New Century as the lender. In view of this scenario, it is no surprise that New Century does not disavow either Mathews' authority or the legitimacy of the documents. There is no material dispute of fact that Mathews represented New Century and that the company was capable of contracting through its agent.
 
 
 21
 The Grimeses do assert that because the actual cash disbursement was different from the amount they anticipated receiving, the contract lacked mutual consent, the second element of contract formation under California law.[1] The cash disbursement, however, was an arithmetic function of the loan terms, which are not in dispute, and the amount of the Grimeses' underlying credit card and mortgage debt, amounts within their control, not within New Century's discretion. As in most mortgage transactions, the payoff amounts were estimated in the disclosure statement. The Official Staff Commentary to Regulation Z states that "[d]isclosures may be estimated when the exact information is unknown at the time disclosures are made," 12 C.F.R. pt. 226, Supp. 1, cmt. 5(c)(2), and redisclosure is not required even in the event that more accurate information becomes available before the loan is funded, id. at 5(c)(3).
 
 
 22
 Significantly, the amount of cash disbursement is not a "material term" of the loan agreement under TILA. See 12 C.F.R. § 226.23(a)(3) n. 48. TILA's approach to materiality makes sense—the key disclosures, such as the amount financed and interest rate, drive the economics of the transaction. The cash payout is simply a consequence of the key terms of the loan, not itself a key term of the loan under TILA or state law. Here, the Grimeses agreed to all material terms of the contract. Whether the alleged misrepresentations about the cash payout are the basis for a state law claim under the California Business and Professions Code § 17200 et seq. is not a question before us. The district court did not foreclose this avenue of relief, as the state claims were dismissed without prejudice to refiling in state court.
 
 
 23
 Finally, the Grimeses argue that because New Century had discretion not to fund the contract "unless and until it is fully satisfied that all terms of its conditional approval have been met in a satisfactory manner," New Century was not obligated to the contract.[2] California law, however, sets a fairly low bar for finding consideration, and so-called "satisfaction clauses" therefore do not prevent contract formation. See, e.g., Storek & Storek, Inc. v. Citicorp Real Estate, Inc., 122 Cal.Rptr.2d 267, 281, 100 Cal.App.4th 44, 61 (2002) ("When a condition precedent to a promisor's performance calls for satisfaction as to commercial value, the contract is not illusory because the promisor's ability to claim dissatisfaction is limited by the standard of reasonableness."); Converse v. Fong, 205 Cal.Rptr. 242, 245, 159 Cal.App.3d 86, 90 (1984) (holding that a contract conditioned on the buyer's approval of termite and roof reports was enforceable).
 
 
 24
 Even where the lender may refuse to fund the loan "for any reason as determined by the Lender in its sole but reasonable discretion," as stated in the Borrower Notice signed by the Grimeses, California law supports the formation of an enforceable contract; "[t]he covenant of good faith is implied in order to set a limit on the promisor's ability to express dissatisfaction and thereby supply adequate consideration to support the contract." Storek, 122 Cal.Rptr.2d at 281, 100 Cal.App.4th at 61; see also Mattei v. Hopper, 330 P.2d 625, 627, 51 Cal.2d 119, 124 (1958) (holding that "the promisor's duty to exercise his judgment in good faith is an adequate consideration to support the contract"). Because the lender cannot "refuse to perform at [its] unrestricted pleasure," Converse, 205 Cal.Rptr. at 245, 159 Cal.App.3d at 90, its promise is not illusory. New Century's discretion to refuse to fund the loan was restricted by its obligation to act "reasonabl[y]" in doing so, and it was thus bound by a duty of good faith. Consideration therefore existed on both sides, and each element of contract formation was satisfied.
 
 
 25
 Although it may be uncomfortable to dismiss the TILA claim in light of allegations of misdeeds by the loan officer, federal law compels this result. Indeed, the Staff Commentary to Regulation Z recognizes that "[t]he fact that a term or contract may later be deemed unenforceable by a court on the basis of equity or other grounds does not, by itself, mean that disclosures based on that term or contract did not reflect the legal obligation." 12 C.F.R. pt. 226, Supp. 1, cmt. 5(c)(1). New Century complied with the disclosure mandate of TILA and should not be penalized under federal law for alleged shenanigans of its loan officer that are appropriately left to state law.
 
 
 
 Notes:
 
 
 [1]
 The majority rests its argument in large part on the fact that the interest rate listed on the contract was different from that originally promised by Mathews. Because the Grimeses do not contend that no meeting of the minds existed with respect to the interest rate, but instead point to the difference between the expected and realized cash disbursement, the interest rate issue was waivedSee Rudebusch v. Hughes, 313 F.3d 506, 521 (9th Cir.2002).
 
 
 [2]
 Although the Grimeses rest this argument on the first element of contract formation, the parties' capability to contract, it is more appropriately analyzed under the rubric of consideration