Filed 4/19/13  Plaza Home Mortgage v. North American Title Co. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| PLAZA HOME MORTGAGE, INC., | D059727 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2007-7512-CU-CO-CTL) |
| NORTH AMERICAN TITLE COMPANY, INC., | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Diego County, Judith F. Hayes, Judge.  Affirmed.


In April 2010, we reversed the judgment in favor of escrow holder and settlement agent North American Title Company, Inc. (North American) and remanded with instructions for the trier of fact to determine whether North American breached the closing instructions contract between it and wholesale residential mortgage lender Plaza Home Mortgage, Inc. (Plaza), after North American distributed $53,853 to the attorney in fact of the buyer of real property that was neither authorized by the closing instructions

nor disclosed to Plaza before North American made the distribution. (See *Plaza Home Mortgage, Inc. v. North American Title Co., Inc.* (2010) 184 Cal.App.4th 130.) On remand, the court sitting as trier of fact found North American breached the closing instructions contract with Plaza and awarded Plaza $313,205.56 plus interest.

In this proceeding, North American challenges Plaza's entitlement to, and award of, damages. North American contends the award of all the funds North American was holding when it received the last-minute escrow instruction from the seller was premised on a finding that is unsupported by the record, namely that had North American advised Plaza of the amended instruction, Plaza could have unwound the loan transaction and recouped the funds in North American's possession/account. North American alternatively contends that, as a matter of law, Plaza's damages should be limited to $53,853—the amount unlawfully distributed by North American to the buyer's attorney in fact. We disagree with both contentions and affirm the judgment entered in favor of Plaza.

BACKGROUND

Following a two-day bench trial, the court issued the following detailed statement of decision:

"**I. STATEMENT OF FACTS**

"Plaintiff, Plaza, a Wholesale Residential Mortgage Lender, borrows money from warehouse lenders to make loans on residential properties. When the loan is funded, Plaza then sells its loans to investors. In March, 2007, Plaza loaned $1.1 Million Dollars

2

to a Corrections Officer named Oliver Aleta to finance the purchase of a home in Northridge, California. Mr. Aleta's attorney-in-fact, Edward Peregrino, signed most of the loan documents, presumably on behalf of his client. On March 1, 2007, Plaza funded the purchase money loans by way of an $880,000.00 first trust deed and a $220,000.00 second trust deed and wired those funds to the title company, Investors Title. On March 2, 2007, after the new deed of trust was recorded at 8:00 a.m., the title company sent one wire to Wells Fargo in the amount of $769,788.05 to pay off the existing lien [on the subject real property], and a second wire to the escrow, defendant [North American], in the amount of $313,204.56, to make disbursements in accordance with Plaza's closing instructions. Plaza's closing instructions specified that [North American] would make disbursements from escrow only in amounts and to people whom Plaza had pre-approved:

"Attention Settlement Agents:

"Plaza Home Mortgage will not [disburse] funds to cover borrower fees that either do not appear on the Estimated HUD-1 or fees that were not verified by a Closer employed by Plaza Home Mortgage. . . .

"Please thoroughly review the fees listed on our Truth-in-Lending Itemization and verify that these fees match those on the final HUD-1 Settlement Statement. The settlement agent cannot change fee amounts after the final documents have been signed by the borrower. . . .

"[Beneath the acknowledgment signature by the [North American] settlement agent it says:] 'By signing, the settlement agent certifies that there are no additional payoffs or fees that were not disclosed to the lender either verbally or on an Estimated HUD-1.' [¶] (Exhibit 34.)

"At 10:40 a.m. on March 2, [North American] received, by fax, a new instruction from the seller to pay the sum of $53,853.00 to the buyer's attorney, Edward Peregrino

3

(Exhibit 40). The court finds that Plaza was unaware of this proposed disbursement, which was not on the estimated HUD-1, and there was no evidence that [North American] made any effort to inform Plaza of this disbursement. Although escrow officers at [North American] had available a business form called a Proceeds Instruction Form, which escrow officers used to obtain the concurrence of buyer, seller and lender, such a form was not used. On March 5, 2007, [North American] made the payment to Mr. Peregrino in the amount of $53,853.00. The payment was recorded on the final HUD-1 which was sent to Plaza three days later, on March 8th, when Plaza requested it. (Exhibit 39.)

"The Court herein finds that [North American] had a contractual duty to inform Plaza of the payment to Peregrino that [it] learned about during the escrow but before the loan closed. The Court finds the testimony of plaintiff's witnesses credible that, had [it] known of this payment, [it] would not have made the Aleta loans. It was the obligation of North American to disclose to Plaza any additional payoffs or fees that were not included in the estimated HUD-1.

"In terms of proximate cause, this Court finds that, although the failure to disclose the payment to Peregrino was not the only cause of plaintiff's loss that it was a legal cause of plaintiff's injury.

"If Plaza had been alerted by [North American] to the instruction to pay $53,853.00 to the borrower's agent, Plaza would have taken steps to protect itself from a potentially fraudulent payoff. The Peregrino payment would have raised red flags that

4

the property was over-valued and the appraisal was inflated, or that the loan was not an arm's length transaction, or that the seller's credits to the buyer exceeded FNMA Guidelines. This was especially true in light of the fact that the seller had previously agreed to pay $10,000 towards the buyer's closing costs. Because [North American] failed to advise Plaza about the proposed payment to Mr. Peregrino, Plaza remained ignorant of this payout and Plaza allowed the loans to close without taking the steps necessary to protect itself. Had Plaza known of the payment, [it] would have taken steps to unwind the deal and recover the payouts which had already occurred.

"While Plaza was trying to sell the Aleta loans, Mr. Aleta defaulted on his third loan payment. Even if Plaza had been able to sell the loan to an investor, because of industry practices and explicit contractual terms in the sale agreement, it would have had to repurchase the loans because the borrower defaulted after only two payments.

"Plaza mitigated its loss by taking back from Mr. Aleta a Deed in Lieu of Foreclosure (Exhibit 49) and then selling the property (Exhibit 71) for the sum of $716,153.13 (Exhibit 72). The Court finds Plaza's calculation of damages, based upon the loss suffered on re-sale and costs of repair to the property, to be somewhat speculative but finds that the loss suffered by Plaza in repairing, maintaining and marketing the property in question was at least $313,205.56 as is more fully discussed below.

## "II. [NORTH AMERICAN'S] DUTY TO PLAZA

"Both of the arguments made by [North American] -- that it had no duty to disclose this payment because it was the seller's money, and that the kickback to Mr.

5

Peregrino did not constitute a 'payoff' or 'fee' under the terms of the closing instructions -- were rejected by the Court of Appeal in its decision in this case reported at 184 Cal. App. 4th 130. There, after a review of the closing instructions in light of the $53,853.00 payment, and the fact that the instruction to pay Peregrino was not received by [North American] until *after* the deed had been recorded but *before* the loans closed, at a point in time when [North American] argues[] the money was owned by the seller, the Court of Appeal ruled:

> "'Instead, we are concerned in the instant case with the duties and obligations of North American to disclose to Plaza any "additional payoffs or fees" that were not included in the estimated HUD-1 or otherwise disclosed by North American. We conclude this duty to disclose continued until the loans closed, and not, as North American argues and the trial court concluded, when escrow closed.' [¶] At 138.

> "To permit [North American] to make payments that Plaza did not approve 'would actually encourage potentially illegal and unlawful conduct, such as the "kickbacks" in *Money Store* [*Investment Corp. v. Southern Cal. Bank* (2002) 98 Cal.App.4th 722] or here, which Plaza claims was a "red flag" that the subject property was overvalued and the appraisal inflated.' [¶] At 140.

> "[North American] had a duty to tell Plaza about the proposed payment to Mr. Peregrino *before* it made the payment, to give Plaza the opportunity to approve or disapprove the payment. There was adequate time to give Plaza notice, there was a business form available to give notice and to get approval, and there was no lawful reason not to disclose the Peregrino payoff.

## "**III.  BREACH OF DUTY**

"[North American] presented no evidence at trial that it disclosed to Plaza the proposed payment to Mr. Peregrino.  The payment was not recorded on the estimated HUD-1.  Plaza was not advised about the payment to Mr. Peregrino until [it] saw it in the final HUD-1 which was not sent to [it] until three days after the loan closed and [North American] had disbursed all the funds.  Based upon this evidence, the Court finds that [North American] breached the Closing Instructions Contract.

## "**IV.  CAUSATION**

"Plaza carried the burden of proving that its losses were caused by [North American's] breach of contract.  According to Plaza's evidence, Plaza would have unwound the loans if it had learned of the planned payment of $53,853.00 to Mr. Peregrino before all the funds were disbursed.  Plaza's CFO testified he would have contacted Wells Fargo and unwound the loan transaction and gotten the money back from Wells Fargo.  Plaza had done it in the past and the CFO testified it could have been done in this case.  The Court finds the testimony of plaintiff's CFO and expert both to be credible in this regard.  At the very least, Plaza could have frozen the money still in [North American's] Account ($313,204.56) and mitigated its loss.

"Despite evidence presented by [North American] as to the risky nature of the loans to Mr. Aleta, three of the five trial witnesses (Fontaine, Johnson, and Jacobs) concurred that the types of loans in question were common in the industry in 2007, that billions of dollars of such loans were made by lenders of all types, and that some of the

7

red flags could not have been known by the lender until *after* the loans closed. [North American's] expert opined that Plaza was a victim of loan fraud, that loan fraud occurs in spite of a lender's exercise of due diligence, and that Mr. Aleta had all the characteristics of a typical loan fraudster called the 'straw buyer.'

"Plaza does not have to prove that [North American's] breach was the *only* cause of its loss; where, as here, there are several contributing causes for the loss, Plaza must prove [North American's] breach was a *substantial factor*.

> "[']In all cases involving problems of causation and responsibility for harm . . . the plaintiff's total injury may have been the result of many factors in addition to the defendant's tort or breach of contract. Must the defendant pay damages equivalent to the total harm suffered? Generally the answer is Yes, even though there were contributing factors other than his [or her] own conduct. . . . In order to establish liability the plaintiff must show that the defendant's breach was a "substantial factor" in causing the injury.['] [¶] *Bruckman v. Parliament Escrow Corp.* (1987) 190 Cal.App.3d 1051, 1063.

"Plaza has met this burden of proof: [North American's] breach of contract was a substantial factor in the cause of Plaza's damages.

"If [North American] had forewarned Plaza while [North American] was still in possession of $313,204.56, Plaza would have frozen those funds and mitigated its losses. The purpose of the closing instructions was to permit Plaza to dictate who got paid what, and the purpose of [North American's] duty to disclose was to allow Plaza to approve any disbursement changes. [North American's] failure to alert Plaza, as it should have, did cause Plaza to lose the opportunity to intercept the fruits of the fraud before they were disbursed to the Fraudsters. [North American's] contractual duty to give notice was Plaza's last line of defense against a fraudulent loan.

8

## "**V.  DAMAGES**

"Plaza's damages are $313,205.56.  Had Plaza been given notice of the Peregrino payment before [North American] disbursed all the funds, Plaza could have frozen [North American's] escrow account and mitigated its losses.  If the closing instructions are to have any effect at all, they must permit the lender to prevent the giveaway of monies to parties not previously approved.  Failing to hold [North American] liable for this breach would, in effect, reward it for creating the 'legal holiday' noted by the Court of Appeal.

## "**VI.  DECISION**

"The Court awards Judgment to Plaza Home Mortgage, Inc. and against North American Title Company in the amount of $313,205.56 plus interest from September 26, 2007 and allowable costs.

"IT IS SO ORDERED."

## DISCUSSION

### I

North American first contends there is insufficient evidence in the record to support the finding that *if* it had advised Plaza of the last-minute escrow instruction, Plaza could have unwound the loan transaction.

A.  *Standard of Review*

"Under the substantial evidence standard of review, 'we must consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings].  [Citations.]  [¶]

9

It is not our task to weigh conflicts and disputes in the evidence; that is the province of the trier of fact.  Our authority begins and ends with a determination as to whether, on the entire record, there is *any* substantial evidence, contradicted or uncontradicted, in support of the judgment.'" (*ASP Properties Group, L.P. v. Fard, Inc.* (2005) 133 Cal.App.4th 1257, 1266.)

B.  *Brief Additional Background and Analysis*

Plaza's CFO Michael Fontaine testified as follows:

"Q.  [Plaza's counsel]  Now, if at the point in time, March 2, North American was given the instruction by the seller to pay [$]53,000-plus dollars to Mr. Peregrino, if Plaza had been advised of that on [Friday] March 2, what steps could Plaza have taken to protect itself?

"A.  [Fontaine]  We would have told them to stop the transaction.

"Q.  Is that something that happens from time to time?

"A.  Yes, it has happened.

"Q.  What's involved in that?

"A.  We would notify the settlement agent [e.g., North American] to not disburse funds that were there in [its] possession, if any, and if not, if they had already disbursed everything, we would tell them to unwind the transaction.

"Q.  Has Plaza been able to do that in the past?

"A.  Yes.

10

"Q. Did Plaza have any type of a business relationship with the lienholder [of the real property]?

"A. Yes.

"Q. That was Wells [Fargo]?

"A. Correct.

"Q. What was the business relationship between Plaza and Wells [Fargo] at that time?

"A. Wells Fargo is an investor we sell a pretty large amount of our loans to.

"Q. At that time?

"A. Yes."

North American contends the above testimony merely shows that Plaza would have *told* North American to unwind the transaction, but it does not support the finding that Plaza *could* have unwound the transaction. This contention misses the point.

Indeed, the court—sitting as trier of fact—also found that had Plaza known of the kickback to Peregrino, it would have taken steps to *stop* the loan, as opposed to unwind it, and, at a minimum, frozen the assets then in North American's possession/account. In making this finding, the court found the testimony of Fontaine credible. As a court of review, we do not reweigh the evidence or evaluate the credibility of witnesses, but rather defer to the trier of fact. (See *Lenk v. Total-Western, Inc.* (2001) 89 Cal.App.4th 959, 968; see also *Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 631.) We conclude

11

this finding *is* supported by substantial evidence in the record, as shown by the above testimony of Fontaine.

In addition, we note that because North American failed to notify Plaza of the change in escrow, Plaza in fact lost the opportunity to stop the transaction because by the time Plaza was informed of the unauthorized $53,853 payment to Peregrino, North American already had distributed the loan proceeds in its possession/account. As the trial court noted, North American's contractual duty to give notice was Plaza's last line of defense against a fraudulent loan.

Thus, to the extent that North American complains there is insufficient evidence in the record to support the finding that Plaza could have stopped *this* specific loan transaction, we conclude the lack of such evidence was a direct result of North American's breach of the closing instructions contract. (See *GHK Associates v. Mayer Group, Inc.* (1990) 224 Cal.App.3d 856, 873–874 ["[D]amages may be computed even if the result reached is an approximation," particularly "where . . . it is the wrongful acts of the defendant that have created the difficulty in proving the amount of loss . . . ."].)

In addition, the instruction to pay Peregrino $53,853 raised a red flag in this particular loan transaction because the instruction came so late in the process, after the loan had funded, the lienholder had been paid and the balance of the remaining loan proceeds were in North American's possession/account. Moreover, as the trial court noted, the payment to Peregrino raised even more suspicions because the seller already had agreed to pay $10,000 towards the buyer's closing costs, and thus any additional

12

payment to the buyer (or his agent) suggested the sale of the real property may not have been an arm's length transaction.  Under these circumstances, we conclude there is substantial evidence in the record to support the finding that had Plaza been timely notified of the requested payout to Peregrino, Plaza would have taken steps to investigate the transaction for potential mortgage fraud.

We thus conclude substantial evidence supports the finding of the trial court that had North American fulfilled its contractual duty under the closing instructions, at a minimum, Plaza could have moved to stop the loan transaction and frozen the remaining loan proceeds then in the possession/account of North American.

## II

North American next contends that, as a matter of law, Plaza's damages should be limited to $53,853—the amount of the unauthorized payout to Peregrino.  As noted *ante*, the trial court awarded Plaza damages of $313,205.56, which was equal to the entire amount[1] that was in North American's possession/account when it received the last-minute escrow instruction authorizing the payout to Peregrino.

A.  *Governing Law*

Civil Code section 3300 sets forth the standard measure of damages in an action for breach of contract.  It provides:  "For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment

---

[1]     In fact, the record shows the court's damage award was a dollar more than the entire amount of loan proceeds held by North American for distribution.

13

proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom."  (Civ. Code, § 3300.)  "Damages are awarded in an action for breach of contract to give the injured party the benefit of his [or her] bargain and insofar as possible to place him [or her] in the same position he [or she] would have been in had the promisor performed the contract.  [Citations.]  Damages must be reasonable, however, and the promisor is not required to compensate the injured party for injuries that [the promisor] had no reason to foresee as the probable result of his [or her] breach when he [or she] made the contract.  [Citations.]"  (*Coughlin v. Blair* (1953) 41 Cal.2d 587, 603.)

"Where the *fact* of damages is certain, the amount of damages need not be calculated with absolute certainty.  [Citations.]  The law requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation.  [Citation.]"  (*GHK Associates v. Mayer Group, Inc.*, *supra*, 224 Cal.App.3d at pp. 873-874.)

B.  *Brief Additional Background and Analysis*

Plaza at trial submitted evidence of losses totaling $441,461.89 based on North American's breach of contract.  Specifically, Plaza sought to prove its damages by subtracting the proceeds from the sale of the subject property ($716,153.13) from the loan amount ($1.1 million), and then adding in additional sums it spent in connection with the subject property including: interest payments on money it had borrowed to fund the loan ($54,480.01), property insurance ($2,750) and various other miscellaneous costs

14

(e.g., utility payments while it held the property) to arrive at its damage figure of $441,461.89.

Here, we conclude the trial court did not err when it awarded Plaza damages that were *less* than the difference between the proceeds from the sale of the subject property and the loan amount (e.g., $1.1 million, less $716,153.13, or $383,846.87). (See *GHK Associates v. Mayer Group, Inc.*, *supra*, 224 Cal.App.3d at p. 873.)

As we noted *ante*, the seller's last-minute instruction to North American to pay Peregrino $53,853 was a clear signal that the entire loan transaction was potentially fraudulent. If North American had fulfilled its contractual obligation and timely disclosed the payoff, Plaza at least would have had the opportunity to investigate further the loan and freeze the proceeds then in North's American possession/account to determine whether the sale of the subject property was the product of an arm's length transaction between the buyer and the seller.

That $53,853 was the actual amount of the payoff to Peregrino that North American failed to disclose to Plaza does not change our conclusion regarding the court's damage award. Under Civil Code section 3300, Plaza was entitled to damages equal to "all the detriment proximately caused" by North American's breach of the closing instructions contract. In this case, the detriment was not merely the unauthorized payoff to Peregrino, but rather the fact that the last-minute change in escrow instructions by the seller was a clear signal that something *might* be amiss in connection with this loan,

15

namely that the buyer and the seller were not dealing in a bona fide, arm's length transaction (e.g., mortgage fraud).

We recognize that in the end, both Plaza and North American were victims of a fraudulent transaction involving a loan that both parties admit was risky, but nonetheless was not uncommon at the time the loan was made. However, as the settling agent of the loan, North American undertook a contractual duty to notify Plaza of any changes to the escrow instruction and not to distribute loan proceeds that were not reflected on the estimated HUD-1. Given North American's potential exposure based on such an obligation, North American could have, but did not, limit its liability by including in the closing instructions contract a limitation of liability clause, which "have long been recognized as valid in California" under certain conditions. (See *Markborough California, Inc. v. Superior Court* (1991) 227 Cal.App.3d 705, 714.)

## DISPOSITION

The judgment is affirmed. Plaza is awarded its costs on appeal.


BENKE, Acting P. J.

WE CONCUR:


HALLER, J.


O'ROURKE, J.

16